## CHARLES G. BARTHOLOMEW *et ux.*

### *v.*

## ST. LOUIS, JACKSONVILLE & CHICAGO RAILROAD Co.

1. BAGGAGE—*when liability of carrier ceases and that of warehouseman attaches.* Where the baggage of a passenger is placed in charge of the carrier, and upon arriving at his place of destination the passenger leaves it in charge of the carrier, the duty and liability of the carrier, as such, will not be changed to that of warehouseman, until the baggage is stored in a safe and secure warehouse. If the baggage be placed in an insecure room, and is stolen, the carrier will be held responsible in that capacity, not as warehouseman. The same rule applies, in this regard, to the carrying of baggage, as in case of ordinary freight.

2. BURDEN OF PROOF—*in such case.* In an action against the carrier for the loss of baggage which had been stolen from the place where it had been deposited by the carrier, at the place of destination, if the latter seeks to avoid liability as a carrier, and place his defense on the ground that he is

only liable as warehouseman, the burden of proof is upon him to show the baggage was stored in a safe and secure warehouse.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. CHARLES D. HODGES, Judge, presiding.

The opinion states the case.

Mr. GEORGE W. HERDMAN, Mr. J. W. ENGLISH, and Mr. E. A. PINERO, for the plaintiffs in error.

Common carriers of baggage are liable for all losses, not attributable to the act of God or public enemies. Redfield on Railways, 2nd Ed. p 232; *Powell* v. *Myers*, 26 Wendell, 596; *Hall* v. *Cheney*, 36 N. H. Repts. 31.

The mere arrival of the baggage at its place of destination, does not discharge the carrier's responsibility as such. Angell on Carriers, Secs. 114 and 320; Redfield on Railways, 2nd Ed. pp 253, 254; *Powell* v. *Myers*, 26 Wendell, 591; Story on Bailments, Sec. 604.

The record does not show any arrangement by plaintiffs with the defendant's station agent at Delhi, whereby they were to keep the trunk until the next morning; but even if such arrangement were established, the liability of the defendant as a common carrier, would not thereby be affected or changed. *Fenner* v. *The Buffalo & State Line R. R. Co.*, 46 Barb. 103; *Curtis* v. *The Avon, Genesee &c. R. R. Co.*, 49 ib. 148.

Passengers have a reasonable time after the arrival of their baggage at its place of destination, to call for and claim it; and during such reasonable time, the liability of the carrier, as such, continues, and he is responsible, in his character of carrier, for all losses occurring within such reasonable time, not occasioned by act of God or public enemies. Redfield on Railways, 2nd Ed. pp 253, 254 and 255; Story on Bailments, Sec. 604; Angell on Carriers, Secs. 114, 320; *Powell* v. *Myers*,

26 Wendell, 591 ; *Jones* v. *The Norwich and New York Transportation Co.* 50 Barb. 193 ; *Cole* v. *Goodwin,* 19 Wendell, 251 ; *Hollister* v. *Nowlen,* ib. 234 ; *Cary* v. *Cleveland & Toledo R. R. Co.,* 29 Barb. 35 ; *Moses* v. *Boston & Maine Railway,* 32 N. H. R. 523 ; *Van Horn* v. *Kermit,* 4 E. D. Smith's N. Y. Repts. 453 ; *Wood et al.* v. *Crocker,* 18 Wis. 345 ; *Gilhooly* v. *The New York & Savannah Steam Navigation Co.* 1 Daly, N. Y. R. 197.

Reasonableness of time is a question for the jury to determine, under the particular circumstances of each case. *Gilhooly* v. *The New York & Savannah Steam Navigation Co.* ib. 197.

In the case of *Van Horn* v. *Kermit,* 4 E. D. Smith's N. Y. R. 454, twenty-four hours was held a reasonable time within which to call for baggage, after its arrival, and the liability of the carrier, as such, continued during that time.

The carrier's liability, as such, begins from the delivery of the baggage to him, at his depot or warehouse, for shipment, and not from the time it is put on his train, or boat, and we hold that it does not terminate the moment the baggage, for which the passenger holds the carrier's check, is put off the carrier's vehicle. Redfield on Railways, 2nd Ed. pp 246, 247 ; *The Camden and Amboy Railroad and Transportation Co.* v. *Belknap,* 21 Wendell, 354 ; *Moses* v. *Boston & Maine R. R.* 24 N. H. R. 71.

We think the rule announced in *Richards* v. *M. S. & N.I. R. R. Co.,* 20 Ill. 404, *Porter* v. *C. & R. I. R. R. Co.* 20 Ill. 407, and *The C. & A. R. R. Co.* v. *Scott,* 42 Ill. 132, all of which arose out of the carriage of freights, other than baggage, can not abridge the carrier's liability in respect to the checked baggage of passengers.

Mr. A. W. CHURCH, for the defendants in error.

The contract with the plaintiff having been complied with, and her baggage having been safely carried and actually delivered to her, the company's liability as a common carrier ceased,

and when the station master afterwards received it to keep for her until she could send for it, the company assumed thereby only the liability of a gratuitous bailee, and became chargeable only for gross negligence, in case of its loss.

This court has repeatedly decided this to be the law in cases relating to loss of freight. *Richards* v. *M. S. & N. I. R. R. Co.* 20 Ill. 404; *Porter* v. *C. & R. I. R. R. Co.* 20 Ill. 407; *C. & A. R. R. Co.* v. *Scott,* 42 Ill. 132.

It seems difficult to distinguish between the case of freight and that of baggage; indeed, the reason of the rule would apply more strongly to the case where baggage has been received at the company's depot. The custom of all railroad companies is to deliver baggage at their depot, and when it has carried the baggage to the depot, and the owner is there to receive it, as in this case, the duty of the company as a carrier is performed, and its responsibility, as such, ended.

But although this question has never been directly raised in this State, there are not wanting authorities in support of the position in other States.

Thus, it has been decided in Wisconsin that when a passenger, on arriving at his destination, takes his baggage into his own exclusive possession and control, but afterwards, for his own convenience, hands it to the baggage master at the depot, to be kept till called for, the company is not liable for the baggage as a common carrier, but is liable only for gross negligence, the bailment being gratuitous. *Minor* v. *The C. & N. W. R. R. Co.* 19 Wis. 40.

And so in New York, where the passenger did not call for his trunk, but left it in the hands of the company over night without any arrangement with them, and the same was destroyed by the burning of the depot before morning, the company were held not liable. *Roth* v. *The Buffalo &c. R. R. Co.* 34 N. Y. 548.

And in *Hathorne* v. *Ely*, 28 N. Y. 78, it is held that an offer to deliver goods to the consignee terminates the carrier's liability as such.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears from the record in this case, that Jennie E. Bartholomew, one of the plaintiffs in error, became a passenger on the road of defendants in error, from Alton to Delhi, a station on the road, and arrived, with her baggage, at the latter place. Upon her arrival, no teams or means being at hand to carry her and her baggage to her father's, a distance of three miles in the country, her trunk was left at the depot until it should be called for and taken away. The trunk was placed in the depot, and during the night after its arrival, the station house was entered by burglars, who broke open her trunk and took therefrom several articles which it contained, and also stole some tickets and other articles from the company. It appears that Mrs. Bartholomew arrived at the depot late in the evening, which rendered it inconvenient, if not altogether impracticable, to send for and get her trunk from the depot before the next morning. On these facts the jury, under the instructions, found for defendants in error.

It was held, in the cases of *Richards* v. *The Michigan Southern & Northern Indiana R. R. Co.* 20 Ill. 404, and *Porter* v. *The Chicago & Rock Island R. R. Co.* ib. 407, that when a railroad transports goods and they reach their destination, the liability of the company ceases, as common carriers, when they are unloaded, and placed safely and securely in their warehouse, under the charge of competent and careful servants, ready to be delivered, and the liability of warehousemen for hire attaches. In the *Chicago & Alton R. R. Co.* v. *Scott,* 42 Ill. 132, it was said, that to change the relation or duty of the company, from that of a common carrier to that of a warehouseman, the warehouse must be a safe and secure place, in which the goods are stored.

These cases all related to freight in its ordinary sense, as distinguished from baggage, which is usually taken with, and attends persons while traveling. But no difference is perceived between baggage given in charge of the company, and

ordinary freight. In each case the company are paid to transport the property. On freight, the money is paid directly and simply for its transportation, while with baggage, the price paid for its transportation is included in the charge for the ticket the owner purchases for his transportation. In each case the company become equally liable for its safe carriage and delivery, and are under the same responsibility for loss or injury it may sustain. It is true, the two different kinds of property are carried on different trains, but that can not matter, as their liability is in all respects the same. There being no difference in the duty or liability of the carrier in the two cases, they should be governed by the same rules.

When defendants in error, therefore, transported the trunk to Delhi, to relieve themselves from the liability as common carriers, they should have stored the trunk in a safe and secure warehouse, and then the new relation of a warehouse-man would have attached. But the burden of proof is upon the common carrier, to show that the property was stored in a safe and secure warehouse, and until this appears, the company can not be exonerated from the liability of a common carrier. In the case of the *Chicago, Rock Island & Pacific Railroad Co.* v. *Fairclough*, 52 Ill. 106, it was held, that where the railroad company placed baggage in a room of their depot, and a pane of glass in one of the windows of the room which was without blinds, was only held in its place by tacks, and burglars removed the glass and made an entrance through the opening, the baggage was not safely stored, and the company were liable. In the case at bar, for aught that appears, the depot in which this trunk was stored, may have been entirely insecure against the entrance of burglars. The instructions given for defendants in error entirely ignore the requirement that the trunk should have been stored in a safe and secure warehouse to exonerate the company, and in this they were erroneous, and should have been refused, or modified before they were given. The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*