PIKE vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

RAILROAD COMPANIES: *Liability as warehousemen: Negligence in care of warehouse: Court and jury.*

1. As to goods in their possession merely as warehousemen, railroad companies are bound to no more than ordinary care, or such as a man of ordinary prudence would use in respect to his own property placed in like circumstances.

2. Where the daily average of goods stored in a railroad warehouse does not exceed $500, ordinary care does not require the company to keep a night watch about such warehouse, or to have some one sleep therein.

3. In such a case, plaintiff's goods (of the alleged value of less than $800) having been destroyed by fire in defendant's depot, it was error to submit to the jury the questions, whether the goods might have been saved from burning if a night watch had been provided, or if some one had slept in the depot, and whether the absence of either of these was ordinary negligence.

APPEAL from the Circuit Court for *Crawford* County.

The opinion of Mr. Justice COLE herein, as originally prepared, thus stated the facts:

"This action was brought to recover the value of goods destroyed by the burning of the defendant's depot at Boscobel.

It was admitted that the plaintiff's wife and child, on the 12th day of August, 1870, were received as passengers on the defendant's train at Madison, and were transported thence to Boscobel, together with a number of boxes or packages containing goods, on which the wife, above what is usually allowed to passengers for baggage, paid a freight charge. On the same day the goods arrived at Boscobel, and were placed in the defendant's depot; and, on the night of the 31st of August, they were destroyed, with the depot, by fire. The goods were carried on the passenger train with the wife, and were ready for delivery to her when the train arrived at Boscobel. Under these circumstances, the company contended that the goods were to be treated as ordinary baggage; that it held the property in its depot for the convenience of the plaintiff, in the character of a gratuitous bailee, and was only liable for gross negligence. The court, however, instructed that the company was to be regarded as a warehouseman, and was bound to exercise ordinary care and diligence to prevent its destruction. The counsel for the defendant seasonably requested the court to direct the jury to find a special verdict, and submitted certain questions for the jury to find upon in such verdict. These questions the court refused to submit, but did submit some twenty-three questions of its own, to be answered by the jury in their finding."

The following are some of the questions above referred to:

"1. It is admitted that defendant provided no night watch to take care of the depot. If such a night watch had been provided, is it probable that defendant's depot and plaintiff's goods might have been saved from burning?

"2. Was the omission to provide such a night watch ordinary negligence according to the preceding definition [referring to a definition previously given by the court]?

"3. Was the omission to provide such night watch gross negligence according to the preceding definition [referring to a definition of gross negligence previously given by the court]?

" 4. It is admitted that no one slept in the depot the night of the fire. Had some one slept in the depot, is it probable that the burning of the plaintiff's goods might have been prevented thereby?

" 5. Was such omission ordinary negligence as before defined ?

" 6. Was such omission gross negligence as before defined ?

" 7. Did the fire originate from a kerosene lamp left burning in the telegraph office or reception room?

" 9. Was so leaving the lamp, though properly trimmed and placed, ordinary negligence?

" 10. Was so leaving such lamp, properly trimmed and placed, gross negligence? "

The jury answered all these questions affirmatively, and also rendered a general verdict for the plaintiff; a new trial was denied; and the defendant appealed from a judgment on the verdict.

*John W. Cary*, for the appellant.

The cause was submitted for the respondent on the brief of *Geo. C. Hazelton*, who contended, 1. That negligence, where the facts are disputed, is always a question of fact for the jury. *D. & M. R. R. Co. v. Curtis*, 23 Wis., 152; *Langhoff v. R'y Co.*, 19 id., 489; *Duffy v. R'y Co.*, 32 id., 269; *Ernst v. R. R. Co.*, 35 N. Y., 9; *Oldfield v. R. R. Co.*, 14 id., 310; *Cosgrove v. Ogden*, 49 id., 255; *Beers v. R. R. Co.*, 19 Conn., 566; *Bill v. Smith*, 39 id., 206; *Norris v. Litchfield*, 35 N. H., 277; *R. R. Co. v. Stout*, 17 Wall., 657. 2. That as the jury had found the defendant guilty of gross negligence in leaving a kerosene lamp burning in the depot, the question of error in the submission of the first six questions was wholly unimportant.

Cole, J. Without considering the exceptions taken to the rulings of the court on the trial, we think the judgment must be reversed because improper questions were submitted by the

circuit court to the jury, upon which to find a special verdict. Some of the questions were clearly improper, and should never have been submitted.   The criticism passed upon them by the defendant's counsel seems to us entirely just and well founded. In the form in which they were submitted, the jury were not asked to find upon matters of fact arising upon the evidence, but were invited to speculate whether it was probable that the depot and plaintiff's goods might have been saved from being burned, if a night watch had been provided to take care of the depot, or some one had slept in the building.   Of course this was allowing the jury to speculate as to probabilities and contingencies which they had no right to consider.   For, as a matter of law, we do not think the failure to provide a night watch or to have some person sleep in a depot situated as that of Boscobel was, in which the daily average value of property stored did not exceed $500, as shown by the evidence, was ordinary negligence.   Ordinary negligence is the absence of such care and diligence as a man of ordinary prudence would use in taking care of his own property placed in like circumstances. ·  How many men of ordinary prudence provide a night watch for their stores and warehouses, where only $500 worth of property is kept or stored ?   Probably few, if any, persons exercise that degree of diligence in taking care of their own property.   At most, the defendant was bound to exercise only ordinary prudence as a warehouseman in taking care of plaintiff's property.   This being so, it was an entirely unwarranted course to permit the jury to speculate as to what would probably have happened under an assumed state of facts which had no reference to the question of the defendant's liability.   The charge is often made, that juries are apt to find railroad corporations liable for losses and injuries under circumstances where an individual would not be held responsible.   This reproach upon the administration of justice — if ever well founded — should surely not be merited by any action of the court in bringing about by some ingenious pro-

cedure a verdict against the company. Many of the questions submitted to the jury as the basis of a special finding were open to the objection, either that they were entirely irrelevant to the proper issues in the case, or were plainly calculated to secure a favorable verdict for the plaintiff. That this was the direct and necessary result in requiring the jury to conjecture and speculate as to what might have happened if the company had kept a night watchman about the depot, or had some one sleep in the building, is plain. The proof was clear that it was not customary or usual to keep night watchmen at depots of the size and importance of that at Boscobel; and no such questions as the first six should have been submitted to the consideration of the jury. It was a fair question, whether a kerosene lamp was left burning in the telegraph office or reception room, and whether the fire originated from such lamp; and, if a lamp was thus left burning, no one being in the depot, whether it was not such an act of negligence on the part of the employees as rendered the company liable for the loss of the goods. But all the questions in regard to the keeping of a night watchman about the depot, or of having some one sleep in the building, and as to what would probably have happened had that been done, should have been excluded from the consideration of the jury. Because the cause was not fairly presented to the jury in the questions submitted by the circuit court, there must be a new trial.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.