## LEWIS WALD

*v.*

## PITTSBURG, CINCINNATI, CHICAGO AND ST. LOUIS R. R. CO.

*Filed at Ottawa June 13, 1896—Rehearing denied October 13, 1896.*

162    545
68a   637
162    545
70a   656
162    545
173    176
162    545
d91a  ⁵579
162    545
95a   ²339

1. ACT OF GOD—*an unprecedented flood is an act of God.* An unprecedented flood, by reason of which the baggage of a passenger is swept away, is an act of God.

2. SAME—*when loss is due to act of God.* A loss or injury is due to the act of God where it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight.

3. CARRIERS—*act of God does not exempt carrier, where negligence contributes to the loss.* A common carrier is not exempt from liability for a loss occasioned by an act of God, if the carrier has been guilty of any previous negligence which brings the property in contact with the destructive force or unnecessarily exposes it thereto.

4. SAME—*responsibility where act of carrier exposes property to the cause of loss.* A carrier is responsible where property committed to it is by its negligence brought under the operation of natural causes that work its destruction, or is exposed to such cause of loss.

5. SAME—*liable for loss by act of God where promptness would have avoided it.* Unnecessary delay of a carrier which subjects the goods in its possession to a loss by an act of God which they would not otherwise have met with, is of itself such negligence as will make the carrier liable for the loss.

6. SAME—*duty of railway company to send baggage on same train with passenger.* A railway company impliedly undertakes that the baggage of a passenger upon a limited express train shall go upon the same train on which he takes passage, unless he gives some direction, does something or omits to do something which authorizes the carrier to send the baggage by another train.

7. SAME—*destruction of baggage shipped by later train—liability for loss.* A carrier which, without sufficient reason, fails to ship the trunk of a passenger upon the limited train taken by such passenger, is liable for its destruction by a flood which comes upon the later train on which it is shipped, though such flood is in itself an act of God.

8. TRIAL—*question of negligence in separating baggage from passenger is for the jury.* It is a question of fact for the jury whether or not a railroad company is guilty of negligence in not sending a passenger's baggage by the train on which he travels, and having it so carried throughout the journey.

*Wald* v. *P., C., C. & St. L. R. R. Co.* 60 Ill. App. 460, reversed.

162—35

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR CHETLAIN, Judge, presiding.

. This was a suit by appellant, against appellee, to recover the value of appellant's trunk and its contents, lost while in the possession of appellee as a common carrier, between Cincinnati, Ohio, and New York City. On May 30, 1889, the plaintiff bought a ticket at Cincinnati for passage by the so-called "limited express train" over defendant's road, to New York City. The limited express was a fast train, arriving in New York City two hours sooner than the regular day express. The tickets for this limited train consisted of two printed slips, one, the railroad ticket, being green, the other, the special limited sleeping-car ticket, being purple. No passenger could travel by the limited without having both of these tickets. It was necessary to present these tickets at Cincinnati to some agent of the railroad company in order to have a trunk checked to New York. Plaintiff did so present his tickets and had his trunk checked at Cincinnati for New York. From Cincinnati to Pittsburg passengers and their baggage, for both the limited and day express, traveled on the same train. · This was the case with plaintiff and his baggage. Both left Cincinnati at the same time. At Pittsburg the Cincinnati sleeper, carrying passengers for the limited train, was attached to the regular limited express which had come from Chicago, and the Cincinnati baggage for the limited train was transferred at Pittsburg from the baggage car of the Cincinnati express to the baggage car of the limited train. In order to have baggage intended for the limited express so transferred at Pittsburg, it was the practice of the railroad company to attach to each trunk at Cincinnati a white pasteboard tag in addition to the regular brass check, and unless such a white tag had been so at-

tached a trunk remained on the baggage car from Cincinnati and went through by the day express from Pittsburg to New York. In the present case no such white tag had been attached to plaintiff's trunk at Cincinnati, and as a result, while plaintiff's car was transferred at Pittsburg to the limited express his trunk remained on the day express, which followed along some time after the limited. This day express carrying plaintiff's baggage was overtaken by a flood at Johnstown, Pennsylvania, and the baggage car with the entire contents, including plaintiff's trunk, was lost. The limited express on which plaintiff traveled passed beyond the point of danger before the flood came, and was uninjured.

There was some conflict in the testimony as to whether or not it was defendant's fault, that the white tag was not placed on plaintiff's trunk at Cincinnati.

It is agreed, "that there was no negligence in the management of the train, or in the care of the baggage in question while on the train."

On the trial of the case before a jury, at the close of all the evidence the court instructed the jury, as requested by defendant, that plaintiff was not entitled to recover, and that a verdict should be returned for defendant. On the verdict so returned judgment was entered, and this judgment was affirmed by the Appellate Court. The case is brought to this court under a certificate of importance.

In their opinion deciding this case the Appellate Court thus describe the flood which destroyed the baggage car containing appellant's trunk, as such description appears from the testimony to be found in the record: "The flood that was encountered far exceeded what had ever before been known in the region where it occurred. There was a great fall of rain, lasting many hours, which raised the river to a height never before known, and caused wash-outs and land-slides to an extent necessitating the train carrying the trunk to come

to a stand.  As the stream rose the train was shifted from place to place to keep it in safety, and because of wash-outs ahead and behind it could not proceed far either in the direction of returning or advancing.  After remaining in this position for several hours the South Fork dam, which was located on a tributary stream a few miles above where the train stood, and formed a reservoir there at a very much greater elevation, broke, and let into the narrow valley what witnesses described as a great wall or wave of water from twenty to thirty feet high.  Of course everything was swept before it.  Trees, houses, railroad tracks, cars and engines, iron bridges and stone viaducts, were carried before its force, and so complete was the devastation wrought, it was testified in the case that it cost the railroad company $600,000 to put its road-bed, tracks and bridges, within a distance approximating seven miles, in the condition they were in before the flood.  Only those persons who were on the alert and on the hillsides escaped death.  The engineer of the locomotive to the train in question escaped only by fleeing up the hillside.  His locomotive was turned over, and the baggage car, which was coupled to it and in which plaintiff's trunk was being carried, was swept away, and it was testified that the car was never afterwards found in recognizable form."

BURNHAM & BALDWIN, for appellant:

The implied undertaking is that passenger and baggage shall travel together on the same train throughout the journey, and if the passenger and his trunk become separated and the trunk is lost, the carrier is liable. Schouler on Bailments, (2d ed.) pars. 672, 675; *Wilson* v. *Railway Co.* 56 Me. 60; *Fairfax* v. *Railroad Co.* 73 N. Y. 167.

The flood in which plaintiff's trunk was lost was not entirely free from human intervention, and was therefore not an act of God.  *Polack* v. *Pioche,* 35 Cal. 416; *Railroad Co.* v. *Sawyer,* 69 Ill. 285; *Merchants' Dispatch Co.* v. *Smith,*

76 id. 542; *Steele* v. *McTyers*, 31 Ala. 667; *Transportation Co.* v. *Tiers*, 24 N. J. L. 697.

Where the negligence of a carrier concurs with an act of God, and is one of the causes, in a direct sequence, producing the loss, the carrier is liable.   *Railroad Co.* v. *Curtis*, 80 Ill. 324 ; *Michaels* v. *Railroad Co.* 30 N. Y. 564 ; *Read* v. *Spaulding*, 30 id. 630 ; *Condict* v. *Railroad Co.* 54 id. 500; *Bostwick* v. *Railroad Co.* 45 id. 712; *Dunson* v. *Railroad Co.* 3 Lans. 265; *McGraw* v. *Railroad Co.* 18 W.Va. 61; *Deming* v. *Railroad Co.* 48 N. H. 455; *Read* v. *Railroad Co.* 60 Mo. 199; *Pruitt* v. *Railroad Co.* 62 id. 527; *Wolf* v. *Express Co.* 43 id. 421; *Express Co.* v. *Womack*, 57 Tenn. 256; *Williams* v. *Grant*, 1 Conn. 487; *Crosby* v. *Fitch*, 12 id. 410; *Davis* v. *Garrett*, 19 E. C. L. 716; Shearman & Redfield on Negligence, (4th ed.) par. 39; *Phillips* v. *Brigham*, 26 Ga. 617; *Rodgers* v. *Railroad Co.* 67 Cal. 606; *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Higgins* v. *Dewey*, 107 id. 494; *Railroad Co.* v. *Anderson*, 94 Pa. St. 360; *Railroad Co.* v. *School District*, 96 id. 65.

A contract to carry passenger and baggage is to be construed according to the place of complete performance, which is at the end of the journey.   Story on Conflict of Laws, par. 233; Wharton on Conflict of Laws, sec. 401; *Brown* v. *Railroad Co.* 83 Pa. St. 316; *Curtis* v. *Railroad Co.* 74 N. Y. 116; *Brown* v. *Railway Co.* 4 Manitoba, 396.

GEORGE WILLARD, for appellee:

Motions by each party to direct a verdict are sufficient, in the absence of some clear expression to the contrary, to warrant an inference that a submission of the cause to the court was intended.   New York Code, 1889, sec. 1009; *Trustees* v. *Kirk*, 68 N. Y. 459; *Bradley* v. *South P. Co.* 14 id. 917; *Baird* v. *Mayor*, 74 id. 382; *Koehler* v. *Adler*, 78 id. 287; *Bank* v. *Dana*, 79 id. 108; *Hand* v. *Kennedy*, 83 id. 149.

The general proposition of law submitted was in conflict with the following authorities:   *Railroad Co.* v. *Smith*, 74 Ill. 197; *Pennsylvania Co.* v. *Fairchild*, 69 id. 260; *Burchard*

v. *Dunbar*, 82 id. 450; *Merchants' Despatch Co.* v. *Furthman*, 149 id. 66; *Railroad Co.* v. *Boyd*, 91 id. 268.

Plaintiff's written request that the court find specially whether the defendant was negligent in the care of the baggage before it was put on the train at Cincinnati was properly refused. It involved a question of fact, and therefore was unauthorized under the rules of practice in this State. *County of La Salle* v. *Milligan*, 143 Ill. 321; *Field* v. *Crawford*, 146 id. 136.

The loss was occasioned by *vis major*, to foresee or to guard against which defendant was not negligent, and consequently not liable for damages, nominal or otherwise. *Long* v. *Railroad Co.* 147 Pa. St. 343.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Appellee's contention is, that the flood, by reason of which appellant's baggage was lost, was an act of God; and that it is not liable for such loss under the well established rule, that "a common carrier, liable as an insurer for the property intrusted to him for the purpose of transportation, is, nevertheless, excused from responsibility for losses which are caused by an act of God." (1 Am. & Eng. Ency. of Law,—2d ed.—p. 592).

It is appellant's contention, that the railroad company should, by placing a white tag on his trunk at Cincinnati, or by some other means, have provided that it should travel with him by the same train throughout the journey; that it did not do so; that as a result of its negligence in so failing properly to check his trunk, it was separated from him during the journey and was lost; and that, even if this flood was an act of God, yet the appellee's negligence in failing properly to check the trunk concurred with the act of God, and thereby made appellee liable for the resulting loss or damage.

*First*—The "Johnstown flood," as it is called, by reason of which appellant's baggage was lost, was an act of God.

In *Long* v. *Pennsylvania Railroad Co.* 147 Pa. St. 343, which was an action brought to recover the value of two trunks and their contents delivered to the Pennsylvania Railroad Company in Cincinnati for transportation to Washington, and where it appears, that the trunks lost were contained in the baggage car of the day express which was destroyed by the Johnstown flood, so called, on May 31, 1889, the Supreme Court of Pennsylvania held, upon substantially the same evidence which is found in the record in the case at bar, that said flood was "an inevitable accident, properly described as *actus dei*." In the *Long case*, however, there was no question as to whether or not the goods lost were upon the right train; that is to say, the point was not there made, that the personal baggage of the passenger had been shipped upon a different train from that on which the passenger himself took passage.

*Second*—There is some conflict among the authorities as to the liability of a common carrier where the loss of goods in its or his possession is due, not solely and only to an act of God, but to an act of God combined with the negligence of the carrier. Many cases hold, and such seems to be the tendency of the decisions in this State, that a common carrier is not exempt from liability for a loss which takes place because of an act of God, if such carrier has been guilty of any previous negligence or misconduct which brings the property in contact with the destructive force of the *actus dei*, or unnecessarily exposes it thereto. A loss or injury is due to the act of God, when it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight; and where property, committed to a common carrier, is brought by the negligence of the carrier under the operation of natural causes that work its destruction, or is, by the negligence of the carrier, exposed to such cause of loss, the carrier is responsible. "It is universally agreed, that, if the damage is caused by the concur-

ring force of the defendant's negligence and some other cause for which he is not responsible, including the act of God, * * * the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage." (1 Shearman & Redfield on Negligence,— 4th ed.—sec. 39). The doctrine is thus clearly stated by the Supreme Court of Missouri in *Wolf* v. *American Express Co.* 43 Mo. 421: "The act of God which excuses the carrier must not only be the proximate cause of the loss, but the better opinion is that it must be the sole cause. And where the loss is caused by the act of God, if the negligence of the carrier mingles with it as an active and co-operative cause, he is still responsible."

In line with this principle many authorities hold, that, where the unnecessary delay of the carrier subjects the goods in his possession to a loss by an act of God which they would not otherwise have met with, the delay is of itself such negligence as will make him liable for the loss. (*Michigan Central Railroad Co.* v. *Curtis*, 80 Ill. 324; *Michaels* v. *New York Central Railroad Co.* 30 N. Y. 564; *Read* v. *Spaulding,* id. 630; *McGraw* v. *Baltimore and Ohio Railroad Co.* 18 W. Va. 361; *Deming* v. *Grand Trunk Railroad Co.* 48 N. H. 455; *Read* v. *St. Louis, Kansas City and Northern Railroad Co.* 60 Mo. 199; *Williams* v. *Grant*, 1 Conn. 487; *Davis* v. *Garrett*, 19 Eng. C. L. (6 Bing.) 716; *Crosby* v. *Fitch*, 12 Conn. 410; *Rodgers* v. *Central Pacific Railroad Co.* 67 Cal. 606; *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Higgins* v. *Dewey*, 107 id. 494; *Philadelphia and Reading Railroad Co.* v. *Anderson*, 94 Pa. St. 360; *Baltimore and Ohio Railroad Co.* v. *School District*, 96 id. 65). We are inclined to think that this is the correct doctrine. There are cases which hold to the contrary—among which are the leading cases of *Denny* v. *New York Central Railroad Co.* 13 Gray, 481, and *Morrison* v. *Davis*, 20 Pa. St. 171—upon the ground that such delay, whether justifiable or not, should not be regarded as the proximate, but only as the remote cause of the loss. It will be found, however, upon examination, that most

of these cases are cases where mere delay *without other negligence* brings the property lost within the operation of the natural cause defined to be an act of God.   (1 Am. & Eng. Ency. of Law,—2d ed.—p. 596).

In the case at bar, when the appellant bought his tickets for a passage upon the limited express train and applied to have his baggage checked, there was an implied undertaking on the part of appellee that his baggage should go on the same train on which he took passage; and appellee was bound to send his baggage on the same train on which he went, unless the appellant gave some direction, or did something, or omitted to do something, which authorized appellee to send his baggage by some other train.   "The implied undertaking of the passenger carrier as to transporting baggage is, that passenger and baggage shall go together; since all baggage is taken with reference to the wants of a particular journey.   * * *   Nor ought the carrier, without permission, to send the baggage by later trains or a different route, unless in a strong case of necessity.   We need hardly add, that, if, through the carrier's own action, passenger and baggage become separated, the carrier bears the risk."   (Schouler on Bailment and Car.—2d ed. —sec. 675; *Wilson* v. *Grand Trunk Railroad Co.* 56 Me. 60; *Fairfax* v. *New York Central and Hudson River Railroad Co.* 73 N. Y. 167; *Toledo, St. Louis and Kansas City Railroad Co.* v. *Tapp*, 6 Ind. App. 304).

It was a question of fact in this case, whether or not appellee was guilty of a violation of its implied undertaking or contract to send the baggage on the same train with appellant; in other words, whether or not appellee was guilty of negligence in not taking proper steps to have the baggage carried by the train on which appellant traveled, and to have it so carried throughout the whole length of the journey; or whether the failure to have the baggage transferred to the baggage car of the limited express train at Pittsburg was in any way the

fault of the appellant. We think that the court erred in not submitting this question of fact to the jury, and in directing a verdict for the defendant without permitting the jury to pass upon such question.

If appellant's trunk had been transferred at Pittsburg to the baggage car attached to the limited express train from Chicago, as was done with the sleeping car in which appellant was traveling, the trunk would have passed through the place of danger before the flood occurred, and would not have been destroyed or lost by reason of the flood. If the appellee was guilty of negligence in failing to put the trunk upon the right train—upon the train where its implied contract with appellant required it to put the trunk—it was guilty of negligence which brought the trunk in direct contact with the force known as an act of God. "If the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." (Shearman & Redfield on Negligence,— 4th ed.—sec. 39). But, here, it cannot be said, that the flood would have caused the loss if the trunk had been transferred to the limited express train at Pittsburg.

It is said, however, that the contract of transportation was made at Cincinnati, Ohio; that such a contract and the liabilities of the parties under it are governed by the law of the place where the contract was made; that the contract to transport appellant's trunk, having been made in Ohio, must be governed by the law of Ohio; that, by the law of that State, loss of goods in the possession of a common carrier occurring by reason of an act of God, even though such loss would not have been met with but for unnecessary delay on the part of the carrier, relieves the carrier of liability for the loss; and that the case of *Daniels* v. *Ballentine,* 23 Ohio St. 523, which was introduced in evidence, shows what the law of Ohio is upon this subject. If the doctrine of *lex loci contractus* is applicable to this case, and if the case referred to is the

law of Ohio, we do not think that the contention set up can be maintained, because the doctrine of the *Daniels case* is not applicable here.

In that case, the action was brought to recover the value of a barge, which defendants contracted to tow by means of a steam tug from Bay City, Michigan, to Buffalo, New York, and which was lost in a storm on Lake Erie. It appears, that, after the voyage was begun, the defendants delayed on the route three days, and then began the voyage again, and, while on such delayed voyage, the barge and tug were overtaken by the storm and lost. The court expressly states, that the defendants in that case were not common carriers, and that, although they had such control of the barge as was necessary to enable them to move it, yet the plaintiffs had possession of it, "and for most purposes it remained in their custody and care." The case, however, presents an instance of mere delay without other negligence. If, in the case at bar, the trunk had been placed upon the right train, and that train had been delayed on the way, and by reason of such delay, had come in contact with the flood, then perhaps there would be a resemblance between this case and the Ohio case. But, here, the delay did not result simply from a halting, or stoppage, in the movement of a train which was carrying the trunk in pursuance of the contract of carriage, but it resulted from negligence in failing to keep an implied contract to carry the trunk upon a particular train, and in violating that contract by carrying the trunk upon a different train from the one agreed upon, that is, upon the assumption that the facts would show no excuse for not keeping the contract. It is like a deviation from the usual course by the master of a vessel, during which a cargo is injured by a storm at sea; in such case the deviation is regarded as a sufficiently proximate cause of the loss to entitle the freighter to recover, as it brings the vessel in contact with the storm, in itself the act of God. (*Davis* v. *Garrett*, 6 Bing.

716; 19 Eng. C. L. 212). Here was a deviation from the contract by the use of one agency of transportation not agreed upon, instead of the use of another agency of transportation which was agreed upon, thereby bringing the property in transit in contact with the flood, in itself the act of God. In *Davis* v. *Garrett, supra,* it was urged that there was no natural or necessary connection between the wrong of the master in taking the barge out of its proper course and the loss itself, "for that the same loss might have been occasioned by the very same tempest if the barge had proceeded in her direct course," but the court held the objection untenable, and TINDAL, C. J., there said: "The same answer might be attempted to an action against a defendant who had, by mistake, forwarded a parcel by the wrong conveyance, and a loss had thereby ensued; and yet the defendant in that case would undoubtedly be liable."

The language last quoted is precisely applicable to the case at bar, which is not a case of delay in the transportation of goods being carried by the right conveyance, as in *Daniels* v. *Ballentine, supra,* but a case of neglect in forwarding a trunk by the wrong conveyance, to-wit: by the day express, instead of the limited express. Of course, in all that is here said, it is not intended to express any opinion as to whether the failure to ship the trunk by the right train at Pittsburg was or was not the fault of the appellee in view of the conflict in the testimony as to the circumstances attending the checking and shipment of the trunk. But, if there was nothing in such circumstances which excuses appellee from its implied obligation to ship the trunk from Pittsburg upon the train carrying appellant eastward from that point, then we think that the property was unnecessarily exposed to the destructive power of the flood in question through the previous negligence or misconduct of appellee, and, consequently, that appellee is not excused. (*Williams* v. *Grant,* 16 Conn. 487.) Hence, the case should have been allowed to go to

the jury under the instructions asked by appellant upon this question.

For the reason thus indicated, the judgments of the Appellate Court and of the Superior Court of Cook county are reversed, and the cause is remanded to said Superior Court for further proceedings in accordance with the views herein expressed.                *Reversed and remanded.*