## INDIANA, DECATUR AND WESTERN RAILROAD COMPANY v. ZILLY.

[No. 2.448.   Filed July 1, 1898.]

RAILROADS.—*Common Carrier.*—*Liability for Lost Baggage.*—A railroad company is the insurer of the baggage of a passenger until its arrival and discharge at the place of its destination, and until the owner has reasonable time and opportunity to claim it and remove it.   *p. 574.*

SAME.—*Common Carrier.*—*Baggage.*—Where a passenger is informed of the particular time of the arrival of his baggage, notice of its arrival is not necessary in order to relieve the carrier of its liability as a common carrier. .  *p. 574.*

SAME.—*Common Carrier.*—*Baggage.*—*Warehouseman.*—Where baggage is not called for within a reasonable time, it is the duty of the carrier to store it, and when this is done its liability as a carrier ceases, and that of warehouseman attaches.  *pp. 574, 575.*

SAME.—*Baggage.*—*Liability as Warehouseman.*—A railroad company is only bound to the exercise of ordinary care in storing and caring for unclaimed baggage.  *p. 575.* .

From the Hendricks Circuit Court.   *Reversed.*

*A. L. Mason* and *Will H. Latta,* for appellant.

*James G. Miles* and *Ethan A. Miles,* for appellee.

HENLEY, C. J.—The complaint in this cause was in two paragraphs.   The first paragraph charged appellant with liability for the loss of the contents of a trunk, delivered to appellant and held by it as a common carrier.   The second paragraph of complaint proceeds upon the theory that the appellant was liable to appellee for the loss of the contents of the trunk, charging appellant as a warehouseman.   The cause was tried upon the issues formed by the denial of the material allegations of the complaint.   The lower court found in favor of appellee, and overruled appel-

lant's motion for a new trial. This action of the lower court is here assigned as error by appellants. Amongst the reasons assigned in the motion for a new trial and urged by counsel for appellant in this cause are these: That the judgment of the court in this cause is not sustained by the evidence; and that the judgment of the court is contrary to law.

The evidence is before us, embodied in a proper bill of exceptions, and presents the following undisputed facts: That the appellant is a corporation, and owns and operates a line of railroad 152 miles in length, be-tween the cities of Decatur, Illinois, and Indianapolis, Indiana, and that its said road passes through the town of North Salem, Indiana, where it has a station consisting of a one-story frame building and a platform; that this building contains three rooms, the agent's room in the center, the waiting room to the right of the agent's room, and the baggage room to the left of the agent's room; that the outside doors leading into the baggage room are large doors, of double thickness of wood, and fastened with heavy chains on the inside; that the outside doors of the waiting room are heavy pine doors, locking with a key; that the doors, two in number, leading from the agent's room into the baggge room, and one leading from the agent's room to the waiting room are ordinary doors with ordinary fastenings and are inside doors and were not locked on the night of Sunday, the 20th day of October, 1895; that there are no outside windows to the baggage room, and that the windows to the waiting room are about three and one-half feet across, three feet above the ground, and consist of one upper and one lower sash made from pine wood and painted and sanded; that these windows were all fastened by iron fastenings at the place where the lower and upper sash met. These fastenings were each attached to the

window sash by two screws about one inch long. Across each of the outside windows, in addition to the fastenings above referred to, and upon the outside were six wooden slats about two inches wide, one inch thick and four feet long; these were also painted and sanded and were fastened by two rails and one screw in each end of each slat, and were placed about eight inches apart; that appellant's agent is present at this station between the hours of 7 and 11:30 a. m., and between the hours of 1:30 and 5:30 p. m., and 6:30 and 8:30 p. m., and that the town of North Salem, where said above described station was situate, has a population of about 800 souls; that there is no other railroad leading to said town except the road owned and operated by appellant, and that said station is situate in the south west part of said town of North Salem, there being no residences nearer thereto than about twenty rods; that on the 11th day of October, 1895, the appellee, who is a resident of the state of Kansas, left her home at Eureka, in said state, to go to the town of North Salem, Indiana, and at the same time she checked her trunk, containing articles that were afterward lost to her; that she first purchased a ticket for Kansas City, Missouri, and had her trunk checked to said last named station; that her trunk was locked and corded when delivered to the agent at Eureka, Kansas; that she arrived in Kansas City on the morning of October 12th and rechecked her trunk at that point to North Salem, Indiana, and that at that time her trunk was corded and locked; that she purchased a ticket by way of the Wabash Railway, to Decatur, Illinois, and thence by way of appellant's road to North Salem; that appellee arrived at North Salem at about 3 o'clock a. m. Monday, October 14, 1895; that while upon appellant's train, appellee inquired of one of the brakemen thereon, and also of the

conductor of the train upon which she was riding, as
to whether or not her trunk was upon the train and
would be delivered to her upon her arrival at North
Salem; that she was informed both by the conductor
and brakeman, to whom she had addressed her in-
quiries, that the train upon which she was riding did
not carry her baggage because of its arrival at her
destination in the night time, but that her trunk
would follow on the day train, which arrived in the
afternoon of the same day of her arrival, and in ac-
cordance with the information thus given her, her
trunk arrived on the same day, having been carried
by the day train, and was delivered to the agent at
North Salem on the afternoon of Monday, October
14, and placed in appellant's baggage room, where
the same remained until the 21st day of October, 1895,
being Monday of the week following its arrival; that
upon appellee's arrival at North Salem, she was con-
veyed by her brother to the home of her father and
mother, about six miles in the country; that at that
time her mother was very sick and the brother of ap-
pellee made daily trips to the house where appellee
was visiting from the town of North Salem; that the
agent of appellant was present at said station daily
during the regular hours before mentioned, and was
ready at all times to deliver said baggage upon proper
demand and presentation of the check for the same;
but that during all of said time no demand was made
for said trunk, and the same remained in said baggage
room as aforesaid up to and until the time before men-
tioned; that on the night of Sunday, October 20,
some unknown person by means of a chisel sixteen
inches long and two inches wide, removed one of the
slats from one of the outside windows in said station
and by placing said chisel under the lower sash of the
window broke the fastening and effected an entrance

into said station, and on the morning of October 21, a brother of appellee called for said trunk and presented a check therefor to the agent of appellant, and the same was delivered to him, but said trunk had upon the night of Sunday, October 21, by some unknown person, been broken open, the cords cut and hinges broken and articles of value taken from said trunk; that no notice was given to the appellee of the arrival of her said trunk; that the trunk did not have upon it appellant's name and residence, but had the name borne by her prior to her marriage, and that appellant's agent did not know appellee either by her present name or by the name written upon her trunk; that he inquired of persons living in the town of North Salem as to the whereabouts or residence of the party whose name appeared upon the trunk, but received no information thereabout.

It is also shown by the evidence that the doors leading from the room occupied by appellant's agent were not locked. These were inside doors. There was a saw mill and several large piles of lumber near the station. The station was located about one half mile from the business portion of the town, and the dwellings extended down to near the station. It was also shown by the evidence that this station and baggage room in which appellee's trunk was stored was such a station and baggage room as is ordinarily used by railroad companies in towns of 800 to 1,000 people, for the transaction of their business, and the reception and retention of baggage until called for.

It will thus be seen that appellee's baggage remained in the baggage room undisturbed and uncalled for, during a period of seven days, before the station was broken into and the articles taken from the trunk. Under the authorities, appellant's liability as a carrier had ceased long before the loss herein

complained of. Where a passenger has notice of the rules and regulations of the company, and the rules and regulations are reasonable, regarding the manner of transporting and delivering baggage, the passenger is bound thereby although not directly assenting thereto. *Gleason* v. *Goodrich Trans. Co.*, 32 Wis. 85.

It was held in the case of the *Chicago, etc., R. R. Co.* v. *Addizoat*, 17 Ill. App. 632, that a railroad company is the insurer of the baggage of a passenger as long as the relation of a common carrier exists, and that such relation exists as to such baggage until its arrival and discharge at the place of destination, and until the owner has reasonable time and opportunity to claim it and remove it. If such baggage is not called for within a reasonable time, the company should store it in its warehouse, and from that time its liability as a carrier ceases and the liability of a warehouseman is assumed. It was also held in the same case, and we think correctly held, that a passenger can not prolong the strict and rigid liability of a railroad company as a common carrier, longer than is reasonably necessary under the circumstances of the particular case, or for any purpose of his own convenience; and that if a passenger is informed that his baggage has not arrived on the train he came on, and no directions are given concerning it, and no information to identify himself, so that notice of its arrival can be given him, it is his duty to make inquiry for his baggage within a reasonable time after the arrival of the next train. In the case at bar the appellee was informed of the particular time when her trunk would arrive, and no notice of its arrival was necessary to relieve appellant of its liability as common carrier. *Bansemer* v. *Toledo, etc., R. W. Co.*, 25 Ind. 434, 87 Am. Dec. 367. It is the undisputed law that, where baggage is not called for within a reasonable time, it is

Indiana, Decatur and Western Railroad Company *v.* Zilly.

the duty of the carrier properly to store it, and when this is done its liability as a carrier ceases and that of warehouseman attaches. *Mote* v. *Chicago, etc., R. R. Co.*, 27 Iowa 17, 1 Am. Rep. 212; *Bartholomew* v. *St. Louis, etc., R. R. Co.*, 53 Ill. 227; *Wald* v. *Louisville, etc., R. R. Co.*, 92 Ky. 645, 18 S. W. 850; *Burnell* v. *New York, etc., R. R. Co.*, 45 N. Y. 184; *Galveston, etc., R. W. Co.* v. *Smith*, 81 Tex. 479, 17 S. W. 133; *Cincinnati, etc., R. R. Co.* v. *McCool*, 26 Ind. 140; *Bansemer* v. *Toledo, etc., R. W. Co., supra.*

It was the duty of appellant, under the facts in this case, when appellee's trunk arrived, to place it in the baggage room, appellee not being present to receive it, and the liability of appellant then ceased to be that of common carrier and became that of warehouseman. It was not necessary that such baggage room be fireproof or burglar-proof, but it was only necessary that it be such a place as persons of ordinary prudence, under like circumstances, would use for the storage of such goods. *Chicago, etc., R. R. Co.* v. *Fairclough*, 52 Ill. 106. Ordinary care, is all that the law requires. *Cincinnati, etc., R. R. Co.* v. *McCool, supra.*

It would not be required of appellant that it keep a night watch about its baggage room, or to have some one sleep therein, when, as it is shown in this case, no baggage was delivered at this station from the night trains. In such cases there could be no need of any such precautions. See *Pike* v. *Chicago, etc., R. W. Co.*, 40 Wis. 583.

The evidence in this case conclusively shows that appellee failed to call for her baggage within a reasonable time after the time when she was informed that it would arrive; that appellant at the time of the taking of appellee's goods, by some person unknown to either party to this action, occupied toward appellee the relation of a warehouseman, and not of a common

carrier; and that appellant used ordinary care in providing a reasonably safe place to store said trunk, under the facts as presented by this case. Appellee's goods were not lost by any negligent act of appellant, nor by the omission to perform any duty which it owed to appellee. There is no conflict in the evidence. The finding and judgment of the court is contrary to law. Cause reversed, with instructions to sustain the motion for a new trial.