## Mrs. Charles A. Bradley, Plaintiff in Error, v. Chicago & Northwestern Railway Company, Defendant in Error.

### Gen. No. 14,419.

1. MUNICIPAL COURT—*how appeal determined in fourth class cases.* The Appellate Court in reviewing a judgment of the Municipal Court rendered in a fourth class case will decide the same upon its merits as they appear from the record and in so doing may disregard incidental errors of law.

2. PASSENGER AND CARRIER—*when responsibility for baggage does not attach.* The carrier's responsibility for baggage does not attach unless the relation of passenger and carrier has been established. One having a ticket cannot leave his baggage with the carrier and provide for its transportation in due course unless he himself intends at such time to proceed upon his journey. The carrier's liability with respect to baggage is an incident to the relationship of passenger and carrier and if such relationship does not exist at the time of the carriage of the baggage the only responsibility of the carrier is that of a warehouseman.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed March 9, 1909.

THATCHER, GRIFFIN & WRIGHT, for plaintiff in error.

S. A. LYNDE and FREDERIC BURNHAM, for defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Plaintiff in error brought an action in the Municipal Court of Chicago against the defendant in error railway company to recover the value of certain articles of wearing apparel stolen from her trunk while in the possession of the defendant in error at the station at River Forest, Illinois. The trial was had before the court without a jury upon an agreed statement of facts, and the court found the issues for the defendant in error and gave judgment for costs against the plaint-

iff in error. By this writ of error it is sought to reverse the judgment.

The following facts were stipulated by the parties:

"On the afternoon of Saturday, June 9, 1906, between two and half past two o'clock P. M., Mr. Charles A. Bradley, husband of the plaintiff herein, presented to the baggage master at the Chicago & Northwestern Railway Company's depot at Wells street, Chicago, a twenty-five ride commutation ticket, good for bearer over the line of said defendant, between its station in the city of Chicago and its station at River Forest; said ticket belonged to Mrs. Charles A. Bradley, the plaintiff herein; said Bradley at that time delivered to the defendant a transfer check and requested that the trunk which said check called for and which was then in possession of the defendant, having been delivered to it on a transfer check from the Chicago, Rock Island & Pacific Railroad Company's depot, be checked over the road of the defendant to River Forest. He was given a regular baggage check for said baggage in return. At about one o'clock P. M. on Sunday, June 10th, said Bradley and his wife, the plaintiff herein, proceeded to River Forest over the Oak Park Elevated Railroad because, as he says, there was no train convenient on the Northwestern, and they had a dinner appointment at River Forest. At about four o'clock P. M. on said day, said Bradley called for said trunk at the defendant's station at River Forest and discovered that it had been broken into and some of the contents therein stolen.

The ticket above referred to had been used prior to June 9, 1906, by the plaintiff in traveling over the line of said defendant and after June 10, 1906, was entirely used and consumed by the plaintiff in traveling over the lines of the defendant between the city of Chicago and River Forest.

There were about twenty-two trains either way running from Chicago to River Forest daily and stopping at River Forest station, and of these forty-four trains six or seven carried baggage.

The station of River Forest, a suburban village, is located nine miles from the city of Chicago. It is a town of about two thousand inhabitants. Plaintiff had lived there all her life except the two years previous to the loss in question. The station of defendant's railway at said point is located on the north side of the tracks, is about one hundred twenty-five feet long, east and west, and twenty-five feet wide. It has four rooms; the waiting room toward the east; the office next to that; the baggage or freight room next to that, and a little store-room next to that on the west end. In the waiting room there is one door leading to the outside and one from the waiting room into the office. There is a door leading from the office into the baggage room. The office is a small room extending across the entire building, having one window on the north side and one on the south side. These windows are barred with iron bars on the outside of said windows, held in place by screws. The windows have a sash lock and catch locks on each side of the sash operating by springs. The baggage room has two doors and two windows and all the doors are provided with locks. This is the station as it existed on June 9, 1906. The nearest house to the station is situated about two hundred feet from it across the street. The station platform was lighted with ten kerosene lamps.

On the afternoon of June 9th, at 3:55, plaintiff's trunk was left at the station at River Forest by the defendant. Defendant's station agent, Mrs. Emily Elliott, received it on its arrival and placed it in the baggage room of defendant's station. The train on which it arrived was the first train carrying baggage after 2:02. Mrs. Elliott remained at defendant's station until 7:12 P. M. She thereupon locked the doors and windows herself and went home. This was her usual time for going home. At 8:15 A. M. Sunday, June 10th, she was called to the station by Tom Beck, her assistant, and discovered that two bars on the

north window of the office room were broken off and the lower sash pried up; the door between the office and the baggage room open and plaintiff's trunk broken open and the contents scattered about the floor. There was one other trunk in the baggage room at the time, which belonged to Mrs. Elliott's daughter and which was also broken open and rifled. The station was disturbed in no other way.

Thomas B. Beck, Jr., was Mrs. Elliott's assistant. In accordance with his custom, he went to the home of Mrs. Elliott on June 10th, which was Sunday, got the keys of the station and came down to meet the 8:15 A. M. train. He noticed the station in the condition in which Mrs. Elliott later found it, notified her, and upon her instructions notified Mrs. Bradley, the plaintiff.

The general rules of the company in reference to baggage provide that baggage may be allowed to remain in the possession of defendant for a period of twenty-four hours, Sundays not included, after its arrival at its place of destination before a charge for storage is made, and that after that period a charge of twenty-five cents for the first twenty-four hours and of ten cents for each subsequent twenty-four hours is made. It appears that the plaintiff had knowledge of this rule.

It is hereby stipulated and agreed that the value of the property of the plaintiff lost from her trunk while in possession of defendant as aforesaid was one hundred fifty dollars ($150)."

Errors are assigned upon the refusal of the court to hold certain propositions submitted by the plaintiff in error to be held as the law applicable to the case, and upon the holding of certain propositions submitted by the defendant in error as the law applicable to the case.

The principal question raised is whether upon the facts the plaintiff in the court below is legally entitled to recover for the loss of her property. This being

a fourth-class case, it is the duty of this court, under the provisions of the Municipal Court Act (sec. 23, par. 8) to decide the case upon its merits as they appear from the stipulated facts. If, therefore, there be errors in the holdings of the trial court on the propositions held or refused as law applicable to the case, such errors may be disregarded, if they have not prejudiced the plaintiff in error in the presentation of her case, or if they did not affect the decision of the trial court upon the merits. In the view we take of the case we do not deem it necessary, therefore, to set out in detail the numerous propositions to be held as law in the decision of the case, tendered by the parties, and the rulings of the court thereon, though we have examined them; but we take up the main question as above stated without considering in detail each particular ruling urged as erroneous by counsel for plaintiff in error.

The facts stipulated warrant the inference that at the time the trunk was checked to be delivered at River Forest by plaintiff's husband, the plaintiff did not intend to take the train for River Forest on which her trunk was to be transported, or any other train of the defendant on that day. This intention was not made known to the defendant. While the plaintiff did not expressly inform the agent who accepted the trunk and checked it, that the plaintiff would accompany her baggage, that was in effect the information conveyed to the agent by failing to inform him that plaintiff intended to go to River Forest on the following day, and possibly by a route other than that of defendant. Silence upon this matter justified the agent in drawing the inference that the plaintiff or owner of the baggage would proceed on the same train (which was the next train) with it. If the defendant undertook to forward the trunk on the same train as that on which the plaintiff proposed to travel (Wald v. P. C. C. & St. L. R. R. Co., 162 Ill. 545) then there was an implied contract on the part of the plaintiff to accom-

pany her baggage on that train, in the absence of any special direction or understanding which authorized the defendant to send her baggage by some other train. The plaintiff, by not taking the train and by proceeding to her destination by another route than that of the defendant, failed to keep her implied agreement with defendant, and the relation of passenger and carrier was not established. Hence, the defendant's liability as a carrier of baggage was not legally fixed. The defendant became a gratuitous bailee only, on the facts stated in the record.

The law on this question is clearly stated in Hutchinson on Carriers, 3rd Ed., secs. 1274 and 1275, where the learned author uses the following language:

"Sec. 1274. The owner of the property must, of course, stand in the relation of passenger to the carrier in order to fix upon him liability as a carrier of baggage. The carriage is *ex vi termini* incidental to the carriage of the owner as a passenger. If, therefore, that which would have been properly baggage had it been accompanied by the owner as a passenger, should, by accident or mistake, be accepted by the carrier for transportation without being accompanied by the owner, and when he is not or does not become a passenger, the carrier would not have it in its custody in the character of baggage, and would not be responsible for it as such. Of course if he accepted such baggage for transportation, knowing that the owner was not and did not intend to become a passenger, he would accept it to be carried as freight, and would be liable for it as a common carrier of goods. But if he accepted it as baggage, supposing the owner to be a passenger, or about to become one, and it should turn out that he was not and did not become a passenger upon the journey upon which the goods were taken, the question would arise: In what character and under what responsibilities was it carried?

"Sec. 1275. Having accepted it to be carried as

baggage, will the law imply or impose upon him a different contract or duty from that which he undertook? For although the measure of the liability of the carrier of the baggage is the same as that of the common carrier of goods as freight, the risk incurred by the carrier in the two cases is not always the same. When the baggage is accompanied by the owner, as the carrier has the right to suppose will be the case, emergencies may arise in which his care and attention to it may preserve it from loss; and when his journey has been safely made, the carrier may at once deliver to him his baggage, instead of being obliged to keep it for him and thereby prolong his own responsibility. Therefore, to make him responsible as a common carrier of freight for that which he has accepted for carriage as baggage, would be imposing upon him a somewhat different undertaking from that to which he had agreed. * * * Where, therefore, the owner of goods, who has secured the right to be carried as a passenger, tenders his goods as baggage, and the carrier, believing that they are to be accompanied by him, accepts them as such, he will thereby incur with respect to their safety the responsibility of a gratuitous bailee only if, through no fault of his, the owner does not become a passenger upon the journey upon which they are taken.''

The same doctrine is announced in the following authorities: Elliott on Railroads, 1st Ed. sec. 1656; Beale & Wyman on Rate Regulation, sec. 147; Marshall v. Pontiac, etc., R. R., 126 Mich. 45; Wood v. Maine Central R. R., 98 Maine 98; Wilson v. Grand Trunk Ry., 56 Maine, 60; Collins v. B. & M. R. R. Co., 10 Cushing 506.

The facts in Marshall v. Pontiac, etc. R. R. Co., *supra,* show the same relation of the parties, which appears in this case, and the court held that the railroad company was a gratuitous bailee of the trunk for the owner, who had purchased a ticket and checked his trunk with no intention of accompanying it.

We do not regard McKibbin v. Wisconsin Central Ry. Co., 100 Minn. 270, cited by plaintiff in error, as applicable to this case. Nor is the change of the established rule there suggested because of the modern method and custom of sending baggage on trains other than those on which the passengers travel, to be applied to the case at bar, in our opinion. In that case the railroad company was paid by baggage coupons for the transportation of the sample trunks containing merchandise, and, therefore, the relations of the passenger and carrier were different from those shown by the facts here. In that case the court properly held that "the salesman intended to follow his baggage and that the defendant was not a gratuitous bailee", on the facts shown.

It is not contended here, and we do not hold that railroads do not assume the relationship of carrier of baggage in respect to baggage shipped on other trains than those on which the passengers travel, where this has been done by special arrangement, or where on account of the carrier's knowledge of the circumstances, an implied undertaking to do so arises. But, if the fundamental contention of plaintiff in error involved in this case should be held to be the law, a carrier would be forced against its will into a warehouseman's business, and the obligations thereof; for all that would be necessary would be that the owner have a ticket and a *bona fide* intention of using it at some time, no matter when. The carrier would thus be compelled to keep in store for days or even months trunks, with no means whatever of relieving itself of their care. This state of affairs is never contemplated by a carrier in selling a ticket and agreeing to carry the passenger's baggage free, and as an incident thereto, to the point of destination. In C., R. I. & P. R. R. Co. v. Boyce, 73 Ill. 510, the court says, at page 514: "It was never intended that the passenger carriers should become warehousemen of the traveler's personal luggage. * * * The carrier never con-

tracted to carry him as a passenger with a view to such extended liability for his baggage.''

It may be conceded, as urged by plaintiff in error, that the consideration for the carriage of the passenger is the consideration as well for the carriage of his baggage, but it cannot be argued from that in this case that there was any consideration for the carriage of plaintiff in error's trunk; for it is well settled that a holder of a ticket has no rights as a passenger, until he has presented himself for carriage in the proper manner. No duty arises with respect to him until he has offered himself, and has been impliedly or actually accepted for carriage. And for the same reason the mere fact that he has paid for a ticket does not make his trunk baggage. If he never becomes a passenger his trunk never becomes baggage. If he becomes a passenger after his trunk has been carried to the destination, the consideration for the carriage of it as baggage does not relate back to the carriage of the trunk, because, as we have said, in the absence of some arrangement to that effect, that is not the contract.

In our opinion, when the trunk of plaintiff in error arrived at the River Forest station, and, there being no one there to receive it, the defendant in error deposited the trunk in its baggage room, it discharged its full duty, provided the room was a reasonably safe place in which to store it; and the defendant in error became responsible as a warehouseman. Bartholomew v. St. L., etc., R. R. Co., 53 Ill. 227; C., R. I. & P. R. R. Co. v. Fairclough, 52 id., 107; C., R. I. & P. R. R. Co. v. Boyce, supra; Chicago & Alton R. Co. v. Addizoat, 17 Ill. App. 632.

The only remaining question is, whether the baggage room was a reasonably safe and secure place for the trunk. By this is meant, ''not an absolutely fireproof or burglar-proof warehouse, but such an one as a man of ordinary prudence would use for the storage of his own goods'', as stated in the Fairclough case,

*supra.* By the stipulation of facts it appears, we think, that the station house of the defendant in error was a reasonably safe and secure place for the storage of property. The evidence fails to show that the defendant in error was guilty of any negligence which would render it liable as a gratuitous bailee or warehouseman for the loss of the property contained in the trunk through the action of a burglar or thief in making a felonious entrance into the station in the manner and at the time shown by the record. There was no want of ordinary care, we think, on the part of defendant in error. Wood v. Maine Central R. Co., *supra;* Indiana R. Co. v. Zilly, 51 N. E. 141; Byrne v. Fargo, 73 N. Y. Supp., 943; Grossman v. Fargo, 6 Hun. 313; Cohen v. Ry. Co., 59 Mo. App. 66.

We are of the opinion that the judgment of the trial court is just, and is free from substantial error affecting the merits of the cause. The judgment is affirmed.

*Affirmed.*