Case 117—PETITION ORDINARY—March 5.

# Wald & Co. v. Louisville, Evansville & St. Louis Railroad Company.

|       |      |
|-------|------|
| 92    | 645  |
| j124  | 186  |

|       |      |
|-------|------|
| 92    | 645  |
| 135   | 366  |

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. LIABILITY OF RAILROAD COMPANY FOR BAGGAGE OF PASSENGER.— Railroad companies are not liable as common carriers for the baggage of their passengers after the baggage is ready to be delivered to the owner at his place of destination and he has had reasonable time to take control of it. They are then liable only as warehousemen for hire, and no presumption of negligence arises from the destruction of the baggage by fire.

   A passenger on a railway train got off the train about 9 o'clock at night and his baggage was also put off and placed at his disposal. Failing to call for his trunks, they were put in the depot for safe keeping. During the night the depot, with its contents, was burned. *Held*—That in the absence of any negligence on the part of the railroad company, it is not liable to the owner of the baggage.

2. SAME.—The fact that the depot in which plaintiff's baggage was stored was constructed of pine timber, is not evidence of negligence, the depot being in a small town and not exposed to any unusual danger from fire.

3. SAME.—The fact that the agents of the railroad company in charge of the depot,failed to take steps to prevent a traction engine near the depot from being moved by steam at night, is not evidence of negligence, as there was no reasonable ground to apprehend danger from escaping sparks, and, therefore, the court properly refused to submit the question of negligence to the jury.

WILBY & WALD, WILLSON & THUM FOR APPELLANTS.

1. The evidence was ample to justify the conclusion that the depot was fired by sparks from the engine, and it was error to give a peremptory instruction to find for defendant. (Powell v. Fall, 5 Q. B. D., 597; Smith v. London, &c., Ry. Co., L. R., 6 C. P., 14; Greenfield v. Chicago, &c., Ry. Co., 49 N. W. Rep., 95; Gibbons v. Wisconsin Valley Ry. Co., 66 Wis., 161.)

2. The defendant was, as to plaintiffs, a warehouseman, a bailee for hire. (Central Trust Co., of N. Y. v. Wabash, &c., Ry. Co., 39 Fed. Rep., 417; Hoeger v. Ry. Co., 63 Wis., 100; Schen v. Benedict, 117 N.Y., 510; Penn. Co. v. Miller, 35 O. S., 541.)

   As to the liability of such bailee, see opinion of Superior Court in O. & M. R. Co. v. Newhoff, 12 Ky. Law Rep., 467.

Wald & Co. v. Louisville, Evansville & St. Louis Railroad Company.

3. It was negligence on the part of defendant to permit the firing, on its own grounds by strangers, of a dangerous machine, a traction engine, in dry weather, near its wooden depot; as was also the abandonment of the premises by its servants while this was in progress. (Garrett v. Freeman, 5 Jones' (N. C.) Law, 78; Higgins v. Dewey, 107 Mass., 494; Hays v. Miller, 6 Hun., 320 (affirmed in 70 N. Y., 112); Barnard v. Poor, 21 Pick., 378; Vaughn v. Menlove, 3 Bing., N. C., 468; Powell v. Fall, Q. B. Div., 597; Gibbons v. The Wisconsin Valley R. Co., 66 Wis., 161; Smith v. Railway Co., L, R., 6 C. P., 14; Troxler v. Railroad Co., 74 N. C., 377; Flynn v. Railroad Co., 40 Col., 14; Railway Co. v. Overman, 110 Ind., 538; O'Neill v. Railway Co., 115 N. Y., 579; Moore v. Railway Co. (Wis.), 47 N. W. Rep., 273; Carpenter v. Railroad Co., 97 N. Y., 494; Snow v. Fitchburg Railway Co., 136 Mass., 352; Ferrell v. C., H. & D. R. Co., 12 Weekly Law Bulletin, 234; Marine Ins. Co. v. St. L. &c., Railway Co., 41 Fed. Rep., 643; California Ins. Co. v. Union Compress Co., 133 U. S., 387.)

HUMPHREY & DAVIE for appellee.

1. No presumption of negligence arises against the company from the fact that a fire occurs and burns its station, but negligence must be proven; and it can not be unreasonably inferred or surmised. (Beach on Railway Law, sec. 985.)

2. There was no obligation on the part of the company to anticipate that those in charge of the traction engine would be guilty of negligence in firing it up; but it had the right to assume that those persons would exercise reasonable care to prevent firing the depot. (Philadelphia R. R. v. Schultz, 93 Pa. State, 345; Richmond R. R. v. Medley, 75 Va., 499; 26 Wis., 223; 11 W. Va·, 14.)

3. The company was under no obligation or duty to keep a night-watchman at this small, country depot. (Rorer on Railroads, vol. 2, pp. 1296 and 1297; Pike v. C. M. R. R. Co., 40 Wis., 583; L. & C. R. R. Co. v. Mahan, 8 Bush, 184.)

4. It is not negligence for a company to have its country depots built of pine wood, with shingle roofs; nor to store goods in such wooden structures at night. (L. & N. R. R. v. Brownlee, 14 Bush, 596.)

5. The railroad company's obligation as a common carrier as to baggage ceases when the train arrives at the station; and if a passenger chooses to leave his baggage over night in the depot, the company is not bound to look after it as a common carrier, but only as a warehouseman, and is only liable upon it being shown that a loss occurred from its want of ordinary care. (Railroad Co. v. Mahan, 8 Bush, 184; Jacobs v. Tutt, 33 Fed. Rep., 414; Beach on Railways, sec. 912.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellants, a mercantile firm in the city of Cin-

cinnati, had —— Bloeker employed as their traveling
agent to sell their merchandise to customers in different
parts of the country. On the 20th day of July, 1888,
said agent was traveling on the appellee's road as pas-
senger, in the service of appellant as such agent, having
three trunks of samples on board the train, checked as
baggage to Booneville, Ind., a small town, at which there
was a waystation. The train arrived at Booneville on
the 20th day of July, about 9:15 P. M., and the agent got
off the train at that place; the trunks were also put off
and placed at his disposal. But, doubtless, prefering to
leave the trunks at the depot until the next day, he did
not take them to the hotel to which he went, and which
was not far off; and the appellee's agents took charge of
the trunks and put them in the depot for safe keeping.

The depot was a frame building, about twelve years old,
and the roof was covered with shingles. About half past
nine o'clock, and after the appellee's agents were through
with their business for the night, the depot was closed
and the agents went to their respective homes, not leav-
ing the depot in charge of a watchman. About half past
seven, p. m., a traction engine was put off the appellee's
cars at the depot, which was moved about forty or forty-
five feet from the depot building, but still on the appel-
lee's ground; and the persons in charge of the engine—
eight or ten in number—commenced putting water in the
boiler of the engine, which the appellee's agents probably
observed; and after the appellee's agents left, the persons
in charge of the engine supplied the furnace with light
dry wood, and by twelve o'clock at night, the engine was
moved off appellee's grounds by the steam produced by
the firing of said wood. About two or three hours there-

after the depot was discovered to be on fire at the east end of the building, the engine having been nearest to that end. The depot and contents, including the appellant's three trunks and contents, were consumed by the fire. The appellants sought, in the court below, to recover the value of said trunks, upon the ground that the fire occurred, and the trunks were consumed, by the negligence of the appellee. The court instructed the jury, when the evidence was concluded, to find for appellee. Upon appeal to the Superior Court that instruction was affirmed, and the appellant has appealed to this court.

Was there sufficient evidence of negligence to authorize the court to submit the question of negligence to the jury?

We may here state that there is no proof that the sparks were emitted from the chimney of the engine. But it appears that those engaged in firing, saw no sparks emitted from the chimney of the engine. It also appears that sparks would probably have been emitted from the chimney, unless a spark arrester was properly attached to the chimney; and the fact that no sparks were seen by those engaged in raising steam and working the engine, nor by others for that matter, would furnish an inference of fact that there was a protection against damage from flying sparks, rather than that the depot was fired by them. But the kind of traction engine mentioned is in common use in this country, and they are generally moved from place to place as the one in question was moved, and damage resulting from their being moved from place to place, by firing houses and fields, is so seldom that no presumption arises that it is probably dangerous to such property to thus move them. And if it be a

fact that such danger exists without a spark arrester, then the fact that such casualties but seldom occur, furnishes an inference of fact that the chimnies are generally supplied with spark arresters. But, aside from speculation, the proof fails to show directly, nor can an inference of fact be legitimately drawn from the proof, that sparks would fly from the engine in sufficient quantities to endanger property near by. Nor does the proof show, or tend to show, that the appellee's agents in charge of the depot, had any reason to believe that there would be any danger from the sparks flying from the engine; nor is there any proof tending to show that the engine would be moved by steam that night. It is true, that the agents were presumably aware of the fact that the boiler was being filled with water for the purpose of making steam; but it does not follow that they should have inferred that the engine would probably be moved that night. On the contrary, the reasonable inference would arise that the owners were preparing to move the engine early the next morning.

But be this as it may, and concede for the sake of the argument that the agents had reason to believe that steam was to be raised and the engine moved that night, yet, it does not follow that the appellee would be liable for the destruction of the appellant's property, unless the agents had reason to believe that the depot would be endangered by sparks flying from the engine. But, as said, there is no proof directly, or by inference, that the agents had reason to believe that there was such danger; and in the absence of such proof, there is no presumption against the appellee. For its responsibility, in a case like this, is not that of a common carrier, but that of a warehouseman for hire. And there is no presumption of negligence

arising from the mere destruction of the property stored in the warehouse, by fire; but the burden is upon the party alleging the negligence, to establish it by evidence.

The liability of the appellee, as a common carrier, to the appellants, ceased upon the expiration of a reasonable time after putting the trunks off at the depot for the appellants to take control of them; and upon the expiration of such reasonable time, the appellee's liability to the appellants (the trunks being in appellee's custody), was that of a warehouseman for hire; and, as said, there is no presumption of negligence against a warehouseman, but the cause must appear from the evidence. (See Louisville, &c. R. Co. v. Mahan, 8 Bush, 186.)

So, also, the fact that the depot building being at a waystation in a small town, and not exposed to any greater danger from fire than usually attends like places, does not create any presumption of negligence, reasonable prudence being used, on account of the building being constructed of pine timber. (See Louisville & Nashville R. Co. v. Brownlee, 14 Bush, 590.)

The judgment is affirmed.