CASE 46.—ACTION BY R. J. LEWIS AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY FOR LOSS OF GOODS BURNED IN DEFENDANTS' WAREHOUSE.—November 10, 1909.

## Lewis v. Louisville & Nashville R. R. Co.

Appeal from Bell Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1.  Carriers—Loss or Damage to Goods—Nature of Liability.— A common carrier is an insurer of freight delivered to it for carriage and can only escape liability for loss or damage by showing it was caused by the act of God, or the public enemy, or by inherent defects in the goods.
2.  Warehousemen—Nature of Liability.—A warehouseman is not an insurer of goods placed in his warehouse, and is only liable for such loss or damage thereto as is caused by his negligence for failure to exercise ordinary care.
3.  Carriers—Delivery of Goods—Time for Removal by Consignee. —A consignee should have a reasonable time to remove goods after they have been in a carrier's warehouse at their destination.
4.  Carriers—Transportation of Freight—Duty as to Carriage and Delivery.—The duty of a carrier accepting freight for transportation does not end by merely carrying the goods in its cars to the point of destination, but it must deliver them at such place in or about its station as will enable the consignee to conveniently get them.
5.  Carriers—Carriage of Goods—Liability for Loss or Injury— Termination Thereof.—A carrier may keep goods in its cars or place them in its warehouse, but wherever it keeps them, except against loss or damage by act of God, or the public enemy, or by inherent defect, it insures their safety till the

consignee has a reasonable time to remove them after their arrival, as the delivery contemplated is not fully preformec till then.

6. Carriers—Carriage of Goods—Limitation of Liability.—In view of Const. Sec. 196, forbidding a common carrier to contract for relief from its common-law liability, a common carrier cannot by any stipulation in the contract or bill of lading, reduce its liability as an insurer of the safety of goods till the consignee has had a reasonable time to remove them after their arrival.

7. Carriers—Carriage of Goods—Removal by Consignee—"Reasonabe Time."—The period of reasonable time for the removal of goods begins when the consignee knows or, in the exercise of reasonable diligence should know, that they have arrived.

8. Carriers—Carriage of Goods—Actions for Loss or Injury—Questions for Jury.—Reasonable time for removal of goods by a consignee, and reasonable diligence on his part to inform himself of their arrival, are in general questions for the jury.

JAS. H. JEFFRIES and N. R. PATTERSON for appellant.

## POINTS AND AUTHORITIES.

1. It was the duty of appellee as a common carrier upon receipt of appellant's goods at Pineville, to at once notify appellant by mail of such fact, and then to keep said goods safely, as a common carrier until appellant had received the notice of their arrival and then had reasonable time thereafter in which to remove the goods from the depot.

2. In view of the fact that one consignment of these goods was two days in being transported from Louisville to Pineville; that another consignment of the goods was twenty days in being transported from Louisville to Pineville; and that the third consignment of goods was seven days in being transported from Knoxville to Pineville, all over the same railroad system, it would be unreasonable and unfair to require appellant to be waiting at Pineville with his wagon and team, these indefinite and uncertain periods of time to receive his goods.

3. In view of the foregoing, the liability of the appellee, as a common carrier of and insurer of the safe delivery of these goods in question, continued until after they were destroyed by the fire. 2 Hutchison on Carriers (3rd Edition) Secs. 704, 707, 708; 2 Bush, 468, Jeffersonville R. R. Co. v. Cleveland; 92 Ky., 645,

Wald & Co. v. Louisville E. & St. L. R. R. Co.; 32 N. H., 523, Moses v. The Railroad (Quoted at length in 2 Hutchison, Sec. 704Supra.).

BENJAMIN D. WARFIELD, CHAS. H. MOORMAN and C. N. METCALF for appellee.

### POINTS AND AUTHORITIES.

The liability of the defendant for the goods in question was that of a warehouseman, and, inasmuch as it was stipulated that the fire that destroyed them was not caused by the fault, wrong-doing, or negligence of the defendant or any of its agents or servants, the plaintiff is not entitled to recover, and the judgment should not be disturbed. Jeffersonville R. R. Co. v. Cleveland, 2 Bush, 468; Louisville, Cincinnati & Lexington R. R. Co. v. Mahan, 8 Bush, 184; Redfield on Railways, Section 171, Subsections 2 and 3,; Roth v. Buffalo & State Line R. R. Co., 34 N. Y. Reps., 548; Briant, &c., v. Louisville & Nashville R. R. Co., 9 Ky. Law Rep., 47; L. & N. R. R. Co. v. Jones, 10 Ky. Law Rep., 494; Wald & Co. v. L. E. & St. L. R. R. Co., 92 Ky., 645; Moses v. Boston & Maine, 32 N. H., 523; Moore on Carriers, page 267; Harris v. L. & N. R R. Co., 9 Ky. Law Rep. 392; L. & N. R. R. Co. v. Mink, 126 Ky. 337.

OPINION OF THE COURT BY JUDGE CARROLL— Reversing.

The questions presented by this record are: When does the duty and liability of a common carrier of goods as a carrier cease upon the arrival of the goods at the point of destination, and when does its duty and liability as a warehouseman begin?

It is agreed that there was shipped to the appellant Lewis over the road of the appellee company to Pineville, Ky., three packages of goods that were in its warehouse at Pineville on the night of September 16th, when the building and its contents, including this freight, was destroyed by fire; that the fire commenced at a late hour on the night of the 16th, or an early hour on the morning of the 17th, and was not

caused either directly or indirectly by the negligence, fraud, or wrong-doing of the company or any of its agents, servants, or employes; that at the time of the fire, and for some five years prior thereto, Lewis was engaged in selling goods as a merchant at a point some 25 miles distant by the nearest traveled route from Pineville; that during that time all of the goods and merchandise that he sold was delivered to him by the company at its Pineville station, and this fact was known to its agent at Pineville, who also knew where Lewis lived and his postoffice address; that two of the packages of merchandise destroyed reached Pineville on the 13th of September, and were placed in the company's warehouse on that day, and the other package destroyed was placed in the warehouse at noon on September 16th; that neither Lewis nor any one for him made inquiry about or called at the warehouse for the goods, nor was any notice of the arrival of the goods or any of them sent or given by mail or otherwise to Lewis, and he did not at the time of the fire have any knowledge or notice that the goods or any of them were in the warehouse.

It is further agreed that, on account of the heavy traffic on the road, it was impossible for Lewis to know with reasonable certainty when the goods which were shipped from distant points would reach Pineville, and that the goods in question were transported without unreasonable delay, although it appears that one shipment that left Louisville on August 28th did not reach Pineville until September 13th, while another package that left Louisville on September 14th reached Pineville on September 16th, and that the package that was sent from Knoxville, which is only about half the distance from Pineville that Louisville is, did not arrive at Pineville until September

Lewis v. Louisville & Nashville R. R. Co.

13th, although it was shipped on September 6th. Upon these facts the trial court held as matter of law that the company was not liable.

There is really no contrariety of opinion as to the difference between the liability of a common carrier and the liability of a warehouseman; it being everywhere agreed that a common carrier is an insurer of the freight delivered to it for carriage, and can only escape liability for loss or damage to the goods by showing that the loss or damage was caused by the act of God, or the public enemy, or by inherent defects in the goods. It is equally as well established that a warehouseman is not an insurer of goods placed in his warehouse, and is only liable for such loss or damage to the goods as is caused by his negligence or failure to exercise ordinary care.

From these rules it will be seen that, if the goods in controversy were in the custody of the company as a common carrier at the time of their destruction, it would nevertheless be liable for their value; while if they were in its custody as a warehouseman, it would not be liable, as the loss was not occasioned by its fault or negligence. Although the liability of a carrier and that of a warehouseman is well defined, and the distinction between them in this respect clearly pointed out in all the authorities, there is wide and irreconcilable conflict concerning when the liability of a common carrier as a common carrier ceases, and its liability as a warehouseman begins. In Massachusetts and other states the rule is that when the carrier has delivered the goods at the point of destination, removed them from its cars and placed them in its warehouse, its liability as a carrier immediately ceases, and thereafter it holds the goods as a warehouseman. In New Hampshire and other jurisdic-

tions the rule is that the carrier continues liable as a carrier after the goods have reached their destination and have been placed in the warehouse, and for a reasonable time thereafter, in which time the consignee must remove them or otherwise the carrier will hold them as a warehouseman. While the Supreme Court of New York and other state courts of last resort hold that unless the consignee is present when the goods arrive, he must be notified of their arrival and have a reasonable time after notice in which to remove them before the liability of the carrier as a carrier ceases. Hutchinson on Carriers (3d. Ed.) Secs. 701, 710; Elliott on Railroads (2d Ed.) Sec. 1527; note to Denver, &c. R. Co. v. Peterson, 97 Am. St. Rep. 76; East Tenn., etc., R. Co. v. Kelly, 91 Tenn., 699, 20 S. W. 312, 17 L. R. A. 691, 30 Am. St. Rep. 902.

In this state we have no statute on the subject, but the question we are considering has been before this court in three cases. In Louisville, C. & L. R. Co. v. Mahan, 8 Bush, 184, and Wald & Co. v. Louisville, etc., R. Co., 92 Ky. 645, 18 S. W. 850, 13 Ky. Law Rep. 850, the point involved was what constituted a reasonable time in which a passenger might remove from the depot the baggage that came on the train with him. In Jeffersonville R. Co. v. Cleveland 2 Bush, 468, the question presented was in many respects like the one now before us, and the court in delivering the opinion followed what may be called the New Hampshire rule. In that case suit was brought to recover the value of goods shipped by freight and destroyed by fire on the night of April 26th, while they were in the warehouse of the carrier at the place of destination. The goods in the ordinary course of transportation should have arrived on the 20th, but on account

of delays, they did not arrive until the evening of the
25th; and the owner inquired at the warehouse for
them on each day from the 20th to and including the
morning of the 25th.  On the morning of the 26th a
notice to the owner of the fact that his goods had ar-
rived, was deposited in the post office, but not re-
ceived.

In the course of the opinion the court said:
"Whether the responsibility of the company, after
the arrival and storage of the goods in Detroit, was
that devolved by law on carriers or only that of
depositaries, it was not necessary in our opinion that
the company should either give notice of the arrival
of the goods or make actual delivery of them, as is
now done by express companies, in order that the lia-
bility of carriers should cease after reasonable time
had elapsed for the owner to attend and re-
move the goods.  *   *   *   But the liability of rail-
road corporations as common carriers for goods
transported on their railroads continues until the
goods are ready to be delivered at their place of des-
tination, and the owner or consignee has had reason-
able opportunity of receiving and removing them.
*   *   *   What such reasonable time should be must
in the nature of the case when not provided for by
express contract depend on the character of the
freight, the distance to which it is to be carried, and
the capacity and business of the road, with such other
circumstances as would serve to notify the consignee
of the probable time when the goods would reach their
destination, so that, with proper watchfulness, he
might receive them, and thus terminate the carrier's
responsibility as soon as practicable."

Upon the facts stated, the court held the
owner did not have a reasonable time in which

to remove the goods after their arrival, and that the carrier at the time of their destruction was holding them as a carrier and hence liable. The liability was put upon the ground that the owner had exercised reasonable diligence to ascertain when the goods would arrive, and, as their arrival was delayed several days after the time when they should have reached their destination, the owner was not obliged to continue his inquiries as to when they would come, and the notice was not sufficient to enable him by reasonable diligence to remove the goods during the day on which the notice was sent.

Although disposed towards the view that the carrier should give notice if it desires to be relieved of its duty as a carrier, yet we are not fully prepared to overrule the Cleveland Case on this point. This being so, the only question left open is the one relating to reasonable time in which to remove the goods. That the consignee should have such time after the goods have been placed in the warehouse we have no doubt. When a carrier accepts freight for transportation, its duty as a carrier does not end by merely carrying the goods in its cars to the point of destination. It must deliver as well as carry, although by this we do not mean that it must deliver them as express companies do to the home or place of business of the consignee, but it must deliver them at such place in or about its station as will enable the consignee to conveniently get them. It may, if it desires, keep them in its cars or place them in its warehouse, but, wherever it keeps them, it insures their safety except against the causes mentioned until the consignee has reasonable time to remove them, as the delivery contemplated is not fully performed until the consignee has had this time after the arrival of the goods in

which to remove them.  And this is true although the bill of lading or contract for carriage, as in this case, provides "property shall be at the risk of the owner from the time of its arrival at destination whether in the vessel, car, depot or place of delivery; if not taken possession of and removed by the party entitled thereto within twenty-four hours thereafter, shall be subject to a reasonable charge for storage, or at the option of the carrier may be removed or otherwise stored at the owner's risk and cost," as neither this nor any other stipulation in the contract or bill of lading will be allowed to reduce the liability of the carrier below what it was at common law.

Our Constitution (section 196) provides in part that "no common carrier shall be permitted to contract for relief from its common-law liability;" and, under the common law, the duty and liability of the common carrier was not terminated until the goods after the carriage were delivered to the consignee. 2 Kent, Com. 604; Moses v. Boston & Maine R. Co., 24 N. H. 71; 55 Am. Dec. 222.  But, as it is not deemed reasonable to require a railway carrier of freight to deliver the goods to the consignee at his residence or place of business, the rule of the common law in the interest of and for the convenience of this class of carriers has been modified, and now it is only required that the delivery shall be at the point of destination, and at this place the consignee must come for and remove his goods within a reasonable time after their arrival during which time the common-law liability of the carrier continues.

The question then comes up:  What is a reasonable time?  How it is to be determined?  Is it to be decided by the court as a matter of law or by the jury as a matter of fact?  Some courts hold that a reason-

able time for the consignee to, remove the goods is not to be measured by any peculiar circumstances in his own condition or situation rendering it necessary for his own convenience and accomodation that he should have a longer time or better opportunity than if he resided in the vicinity of the warehouse and was prepared with the means and facilities for taking the goods away; or, to put it in another way, a reasonable time is such as will enable one living in the vicinity of the place of delivery in the ordinary course of business and in the usual hours of business to remove the goods.   Moses v. Boston & Maine R. Co., 32 N. H. 523, 64 Am. Dec. 381; L. L. & G. R. Co. v. Maris, 16 Kan. 333; Wood v. Crocker, 18 Wis. 363, 86 Am. Dec. 773; United Fruit Co. v. New York Transportation Co., 104 Md. 567, 65 Atl. 415, 8 L. R. A. (N. S.) 240, 10 Am. & Eng. Ann. Cas. 437; Columbus R. Co. v. Ludden, 89 Ala. 612, 7 South. 471; 5 Am. & Eng. Ency. of Law, pp. 263-274; 6 Cyc. 445.

It must be conceded that this rule has at least the merit of easy application, and that its adoption would solve the question of what is a reasonable time with little difficulty.   Under it the only issues of fact left open would be the time of day the goods arrived at the station, as, if they arrived in time to remove them on that day in the usual hours of business, then they must be removed on that day or afterwards the carrier would hold them as a warehouseman; and so, if they arrived in the night, they must be removed in the hours of business on the following day.   And it is manifest that, if this rule should be applied to the case before us, the carrier would be relieved of responsibility, even as to the package of goods that arrived at noon on the 16th, as a person living in the vicinity of the depot could have removed this package

as well as the ones that came on the 13th, during the afternoon of the 16th. But we do not feel disposed to follow the rule announced. Nor was it observed in the Cleveland Case, supra. There the goods, although they arrived on the 25th, were not destroyed until the night of the 26th, and yet, notwithstanding the fact that the consignee had the entire day of the 26th in which to remove them, the carrier was held liable as a carrier.

In our opinion the true test of what is a reasonable time depends, not on whether the consignee lives in the vicinity of the station, or whether he could remove the goods in the usual hours of business on the day of their arrival, but on the question whether or not he exercised reasonable diligence to ascertain when the goods would or did arrive, and reasonable diligence in their removal, or in the exercise of reasonable care should have received notice of their arrival. If the consignee is present, or if he has notice of the time of the arrival of his goods, or if he is notified by the consignee that his goods have been shipped on a certain day, and the train upon which they are shipped arrives on schedule time, he should remove them within reasonable time thereafter, and, if he fails to do so, the liability of the carrier will be reduced to that of a warehouseman. On the other hand, if he is not present, and has no notice of when they arrive, or there is delay in the transportation of the goods, he should exercise reasonable diligence to inform himself of their arrival and have a reasonable time thereafter to remove them. In other words, the period at which the reasonable time for removal begins is when the consignee knows or in the exercise of reasonable diligence should know that his goods have arrived.

In every state of case the consignee must exercise reasonable diligence to inform himself of the arrival of the goods, and, if he wishes to hold the carrier liable as a carrier, must remove them within a reasonable time thereafter, whether it be a day or a week. What is reasonable diligence being, like reasonable time, a question of fact varying with each case, it is manifest that no fixed rule can be laid down to measure reasonable time or reasonable diligence. What would be reasonable in one instance would be unreasonable in another, and so in these particulars each case must be adjudged upon the facts it presents. If the consignee is to have a reasonable time in which to remove the goods, then it is not just that this should be measured by his proximity to the depot, or his ability to remove the goods on the day of their arrival. All consignees should be treated alike, no matter whether they live close to or far from the depot. If the consignee has exercised reasonable diligence in ascertaining when his goods arrived and in removing them, then he has removed them in a reasonable time. If he has not exercised reasonable diligence in finding out when his goods have or should have arrived, and in removing them, he has not removed them in a reasonable time. This, notwithstanding the respect we have for the courts that define reasonable time in the manner before stated, is, we submit, the true rule, and that the other definition is both illogical and unsound.

How can it be said that a consignee who does not know, and in the exercise of reasonable care, cannot know, that his goods had arrived, has had a reasonable time to remove them? How can it be said that a person has failed to do a thing within a reasonable time when he has no notice that he will be required to

do it? It would be just as well to abolish the rule of reasonable time as to say that the time when reasonable time commences to run is the time when the consignee had not and could not in the exercise or reasonable diligence know of its beginning. The test of reasonable time should not be made to turn on whether or not the consignee might remove them on the day of their arrival if he can do this in the business hours of that day. To illustrate, under this rule if a box of goods arrived at noon, and the warehouse was open in the afternoon, the consignee, if present, or notified, that his goods would be sent on the train that arrived at noon, and the train reached the station on schedule time, and would have a reasonable time in the business hours of that day to remove them.

But, let us suppose that he is not present, and has no notice that his goods have arrived, or are expected to arrive, how can it be said that he has had a reasonable time to remove them on the day of their arrival, when he does not and by the exercise of reasonable diligence, could not learn of their arrival until the following day or the day thereafter? Or let us suppose that the consignee has notice that his goods have been shipped at a certain time, and that in the ordinary course will reach their destination at a certain hour, and the consignee is at the station when the train is due, but it is delayed and does not come until the next day or the day following, must the consignee wait until its arrival? Or let us suppose that the goods in the course of shipment are in some way delayed and do not come for a week, must he wait in attendance at the depot? These examples, which are of common occurrence, illustrate that the rule requiring the goods to be removed on the day of their arrival, if this can be done in the usual business hours, is not the proper

test of what constitutes a reasonable time in which the consignee must remove his goods after their arrival. Nor are we wanting in authority for the views we have expressed as to what constitutes reasonable time. In Redfield on the Law of Railways (6th Ed.) Sec. 175, the learned author, speaking upon this point, says: "Upon principle it seems more reasonable to conclude that the responsibility does not terminate until the owner or consignee, by watchfulness, has had, or might have had, an opportunity to remove them. * * * There is then no very good reason, as it seems to us, why the responsibility of the carrier should not continue until the owner or consignee by the use of diligence might have removed the goods. The warehousing seems to be with that intent, and for that purpose.

And, if we assume, as we must, we think that there is no obligation upon railway carriers to give notice of the arrival of the goods, there does still seem to be reason and justice in giving the consignee time and opportunity to remove the goods by the exercise of the proper watchfulness, before the responsibility of the carrier ends." We appreciate the fact that the rule we have announced is open to objection on account of its uncertainty and the difficulty of its application; but it is not more uncertain or difficult of application than any other matter involving like questions of fact. The decisions of many of the most important business affairs that come before the court turn upon the question of what is reasonable time, and what is reasonable diligence. These two factors enter into cases that come up every day. Nor does the rule impose any particular hardship on the carrier, as it can, by giving notice to the consignee of the arrival of his goods, reduce its liability to that of a warehouseman,

Lewis v. Louisville & Nashville R. R. Co.

if the consignee within a reasonable time after the reception of the notice does not remove them. We may also add that what is reasonable time and reasonable diligence is, except in rare cases, a question for the jury, although it might become, as any other question of fact about which there was no dispute, an issue to be decided by the court.

In conformity with these views, the court should on another trial of the case submit the issues of fact to a jury, and instruct them in substance that if they believe from the evidence that Lewis knew, or in the exercise of ordinary diligence could have known, when his goods arrived, they should find for the railroad company, if he failed to remove them from the warehouse within a reasonable time after he knew or by the exercise of reasonable diligence could have known of their arrival. But if he did not, or in the exercise of reasonable diligence could not have known the time of the arrival of the goods, and did not fail to remove them within a reasonable time after he so knew or could have known, they should find for Lewis.

In the trial each party should be permitted to introduce all pertinent evidence throwing light upon the question of whether or not Lewis exercised reasonable diligence, and failed to remove the goods in a reasonable time.

The judgment of the lower court is reversed, with directions to grant appellant a new trial in conformity with this opinion.