## Louisville & Nashville Railroad Company v. Edwards' Administratrix.

(Decided February 18, 1919.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1.  Carriers—Liability for Shipment if Destroyed.—A common carrier who receives freight for immediate shipment is liable for

its value, if destroyed, as an insurer, unless the destruction is (1) through the act of God; (2) the public enemy; (3) the inherent infirmity of the goods.

2. Carriers—Shippers—Destruction of Goods.—Freight delivered to a railroad company to which the shipper has something more to do before the shipment is to go forward, or where the shipper directs the carrier to hold the goods for his further orders, or until he loads other goods, are held by the carrier as a bailee or warehouseman, and the carrier is not liable for the value thereof if destroyed, unless the destruction was brought about through the negligence of the carrier.

3. Carriers—Shippers—Bill of Lading.—A bill of lading is not necessary in order to charge the carrier with an acceptance of the goods for immediate shipment, if the carrier in fact did so accept the goods; and a bill of lading issued by the carrier before it receives the goods does not ipso facto render the carrier responsible.

4. Carriers—Acceptance of Shipment.—An acceptance of the shipment by the carrier will be presumed where the carrier provides a car into which the goods are to be loaded by the shipper, and when the goods have been loaded the agent of the carrier closes and seals the doors of the car, and promises to deliver a bill of lading to the shipper on the next morning.

5. Appeal and Error—Harmless Error.—A judgment will not be reversed for harmless error in an instruction when the instruction as a whole is not misleading.

6. Trial—Instructions.—An offered instruction is properly refused where there is no evidence to support it.

B. D. WARFIELD and MOORMAN & WOODWARD for appellant.

A. B. BENSINGER and J. P. HOBSON & SON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

By this action, commenced in the Jefferson circuit court, Edwards sought to recover of the Louisville & Nashville Railroad Company the value of a car load of merchandise, consigned by him at Highland Park to himself at New Haven, Kentucky, and which goods were destroyed by fire after the same had been loaded into a box car provided by the railroad company for the transportation of the consignment. The value of the goods was alleged to be $6,138.14. Edwards asserts that the car was fully loaded and placed in the possession of the railroad company as a common carrier, for immediate shipment on Monday evening, April 5, 1915, about 6:30 o'clock, and that the agent of the company then and there received and accepted the car for immediate shipment; while the appellant company says the car was only partly

loaded on Monday evening, and that Edwards either directly or tacitly indicated that he would finish loading the car on Tuesday morning, and therefore the car was not in its possession as a common carrier for immediate shipment, but only as a bailee or warehouseman. The fire was of unknown origin, and destroyed the goods about 11 o'clock p. m. on the night after Edwards says he had completed the loading of the car.

A trial resulted in a verdict and judgment in favor of Edwards for $6,138.14, and the railroad company appeals.

If the goods were in the possession of the railroad company, as a common carrier, for immediate shipment at the time of the fire, the company is liable as an insurer of the goods; but if there remained something to be done to the goods or car by Edwards before the same was ready for shipment, then the company's liability would be such only as attaches to a bailee or warehouseman for negligence. As there is no charge of negligence Edwards' cause fails, unless the car of merchandise was in the possession of the railroad company as a common carrier.

The general rule is that a common carrier is liable to the shipper as an insurer, for the value of the goods, if the goods have been actually or constructively delivered to the shipper and actually or constructively accepted by it for immediate shipment. The common law liability of a carrier, as an insurer of freight, does not attach until the freight has been delivered to it, either actually or constructively for immediate carriage. If the goods are delivered to the carrier to be held until the shipper directs the carrier to forward the goods, or until the shipper does some act with respect to the goods or the shipment, the carrier is not liable as an insurer, but only for negligence which contributes to the injury or destruction of the goods. A bill of lading is not necessary to show delivery of the goods to the carrier or its acceptance of the shipment, and an acceptance by the carrier may be complete without a bill of lading having been issued for the shipment. On the contrary, a bill of lading issued by a carrier before the goods are delivered to it, does not render the company liable. The general rule is thus stated in 4 R. C. L., section 172: "Where goods are placed for shipment in a car which is left standing on a side track by a carrier for that purpose, and the railroad

company is notified of such loading, a constructive delivery to the latter takes place, *eo instanti*, without any further act on the part of the shipper being necessary. The reason given for this rule is that so long as a car remains on a railroad company's road, or side track, it is under its control and necessarily in its possession, at least to the extent that the company, at any moment, after the car is loaded, has the unquestioned right to move it to any other part of its road, whereas, a shipper has no such right, even if he possessed the means, but has simply the right to load the goods on the car." The same author, in section 173, says: "As a general proposition it may be stated that the signing of a bill of lading or the issuance of any written shipping contract is not essential to the complete delivery of a shipment of freight to a railroad company. In other words, if a shipment has passed entirely out of the control of the owner so far as anything remains for him to do before transportation can begin, and has come within the unconditional control and direction of the railroad, the question of actual delivery is not dependent on the issuing of a bill of lading. Particularly true is this principle where there has been an actual physical surrender of the property, as where goods properly marked for shipment have been definitely accepted by the agents of a railroad company with a view to immediate shipment, or have, with the knowledge of the agent, been placed in the carrier's freight depot for immediate shipment. In such a case whether there is an express or implied acceptance of property, it is not necessary that it should be entered on a waybill or freight bill, or any written memorandum made in order to make the company liable for it to the same extent as after it is put on a freight train." The same writer, in a further discussion of the subject, says that a bill of lading is wholly unnecessary to the complete delivery and acceptance of the goods for immediate shipment, and that such an instrument is merely evidence that the carrier has received possession of the property, but this fact may be shown by any other legitimate evidence, in the absence of a bill of lading or receipt.

Edwards applied to the railroad company's agent, at Highland Park, for a box car in which to load and ship a quantity of merchandise to New Haven, Kentucky, and asked if he could have a special freight rate. A few days later he was informed by the agent he could have the car

and that it would be placed on the siding near his store and the depot at Highland Park for the purpose of transporting his goods to New Haven, but that the usual freight rate would be charged. Shortly after that, on Friday evening, the car was placed, and Edwards began to load his merchandise, which was packed in boxes, into the railroad car. Six o'clock was the regular closing hour for the station agent, and the car, being only partly loaded at that hour, was closed and the doors sealed by the agent; next day, Saturday, Edwards loaded other goods into the car, but being unable to complete the loading, the car was again closed and sealed by the agent Saturday evening. On Monday following, Edwards finished, as he says, loading the goods into the car about 6:30 p. m. and informed the agent of the fact that the goods were loaded and that the car was ready for shipment. The agent, according to Edwards, then closed the doors of the car and sealed them, and as it was then after closing time, told Edwards he would give him a bill of lading for the shipment next morning. The goods were destroyed that night. No bill of lading was issued by the company to Edwards, but on Monday evening, according to Edwards, the agent gave Edwards an itemized statement of the goods loaded into the car. The agent says that Edwards had not finished loading the car on Monday evening; that he indicated his desire on Monday evening to load other goods into the car Tuesday morning, and that he did not issue a bill of lading for that reason. There is a sharp conflict in the evidence. If the agent is right, then the railroad company was not responsible for the loss of the goods, because it had not received them as a carrier for immediate shipment, but if Edwards is correct in his statement of the facts, then the company is liable. The railroad company contends that if Edwards' version of what took place on Monday evening at the time the car was closed, be conceded, there was no acceptance by the shipper of the consignment, and, therefore, no liability. It is a well established rule that a carrier is not liable as an insurer for goods which it has not accepted, either actually or constructively, for immediate shipment. But we are unable to see what more the company could have done in the case at bar to have effectuated an acceptance than was actually done. Edwards asked for the car to transport his goods; the car was provided at a convenient place, and within twenty

feet of the depot of appellant; the agent of the company had charge of the car and closed it each evening. Shipping directions had been given him by Edwards; Edwards told the agent on Monday evening that the car was loaded and ready for shipment. The agent then closed the doors and sealed them and promised to deliver to Edwards the next morning a bill of lading for the car. Nothing remained for Edwards to do before the shipment should go forward. It was then placed in the hands of the company as a common carrier for immediate shipment, and was under its absolute control. There was no routing to do, because the appellant company had but one line from Highland Park to New Haven. By agreement the freight charges were to be paid at the destination. We think the facts, as stated by Edwards, fairly show an actual acceptance by the railroad company of the shipment. In the case of Pittsburg C. C. & St. L. Ry. Co. v. American Tobacco Co., 126 Ky. 588, this court held: ''But the acceptance need not always be shown to have been by an expressed act. It may be presumed, when the goods are left in the usual place in accordance with the contract or custom of the carrier to so receive them. Hale on Carriers, 68.'' The cases relied on by appellant, while bearing many of the features of the one in hand, show that control over the goods had not been parted with by the shipper, or that something else was to be done by the carrier before the shipment was to begin, such as counting or weighing the goods. But, when goods are designed for immediate shipment, the placing them in a condition to be carried at the usual place of loading, with the carrier's knowledge of the fact and purpose, or at the place of loading designated by the parties, constitutes a delivery to the carrier and acceptance by it. Railroad Co. v. Flanagan, 113 Ind. 488; Railroad Co. v. Murphy, 60 Ark. 333; Dunnigton v. Louisville & Nashville R. R. Co., 153 Ky. 388; Nelson v. C. N. O. & T. P. Ry. Co., 157 Ky. 259; L. H. & St. L. Ry. Co. v. Southern Seating Co., 157 Ky. 772; C. N. O. & T. P. Ry. Co. v. Williams, 156 Ky. 114; C. N. O. & T. P. Ry. Co. v. Rankin, 153 Ky. 730; Bland v. Adams Express Co., 1 Duvall 233; Farley v. Lavary, 107 Ky. 523; Robertson v. Kennedy, 2 Dana 431; Hall v. Renfro, 3 Met. 54; Gaddis & Stiles v. L. & N. R. R. Co., 129 Ky. 175; Lewis v. L. & N., 135 Ky. 361; C. & O. Ry. Co. v. Hall, 136 Ky. 379; Southern Railway Co. v. Smith, 102 S. W. 232, 31 R. 243.

Appellant company urges a reversal because a peremptory instruction was not given the jury on its motion, and this is based upon the contentions, (a) that the car was never delivered to the company for immediate shipment; (b) the agent was without authority to accept a shipment after six o'clock p. m., the usual time for closing the station; (c) the agent refused to accept the shipment when he refused to issue a bill of lading. While we have considered these contentions, we might say with reference to the acceptance and the issual of the bill of lading that Edwards' evidence shows that he asked for a bill of lading and the agent of the company said he desired to catch a street car to town to get his supper, and asked the indulgence of Edwards until the next morning to issue the bill. Time to issue the bill was given at the suggestion of the agent and for his accommodation. As said in 10 Corpus Juris, sec. 313: "The liability of a carrier as a common carrier begins with the actual delivery of the goods for transportation, and not merely with the formal execution of a receipt or bill of lading; the issuance of a bill of lading is not necessary to complete delivery and acceptance." 4 Ruling Case Law, section 173.

The question of fact was submitted to the jury by the following instructions:

"1. If the jury believe from the evidence that on the afternoon or evening of Monday, April 5, 1915, before or at the time the car of the defendant referred to in the evidence was sealed by Earl Mock, the agent of the defendant at Highland Park, the plaintiff, J. T. Edwards, told or informed the said agent Mock that the loading of said car was completed or that said car was ready, then in that event the law is for the plaintiff and the jury should so find, notwithstanding the fact admitted by the evidence that no bill of lading was issued by the defendant to the plaintiff for the shipment of said goods or property.

"2. But, unless the jury believe from the evidence that on the afternoon or evening of Monday, April 5, 1915, before or at the time the said car of defendant referred to in the evidence was sealed by Earl Mock, the agent of the defendant at Highland Park, the plaintiff, J. T. Edwards, told or informed said agent Mock that the loading of said car was completed or that said car was ready, then the law is for the defendant. Or if the jury believe from the evidence that on the afternoon

or evening of April 5, 1915, before or at the time said car was sealed by the defendant's agent, Mock, the plaintiff said or informed said agent Mock that he, the plaintiff, had some more goods to go into the said car on the following morning, then in that event the law is for the defendant and the jury should so find.''

Appellant insists that the second sentence in instruction No. 2 erroneously placed the burden upon the company to show that Edwards had more goods to go into the said car on the following morning, and that this part of the instruction is in conflict with the first part of the same instruction. The instruction in this particular could have been more aptly drafted, but the second sentence seems to be only an explanation of the first part of that instruction. It would be difficult to conceive of a jury being misled by an instruction which tells them unless you believe from the evidence at the time the said car of defendant, referred to in the evidence, was sealed by the agent of the company, the plaintiff Edwards told or informed said agent that the loading of said car was complete, or that said car was ready, then the law is for the defendant. This is but the converse of the first instruction. It would have been better had the court omitted the second sentence of instruction No. 2. But when the whole instruction is read together, it presents only the converse of instruction No. 1, and is not prejudicial to the rights of appellant, although it is erroneous. Instruction No. 1, offered by appellant, has no place in the law of this case as there was no evidence to support it. The only issue of fact was presented to the jury by the instructions given by the court: Was the car delivered to and accepted by the company as a carrier for immediate shipment? There was no evidence whatever to support appellant's offered instruction on the inherent infirmity of the goods. When the car was discovered on fire, the seal was broken and the west door was opened. Several hoboes were loitering around the depot premises that night. No doubt the fire was started in order to cover a theft.

Appellant complains of the action of the trial court in striking paragraphs Nos. 2 and 3 of its answer. By the second paragraph of its answer, appellant avers that it was not guilty of negligence with respect to the consignment of goods in question; that its agents did not ignite or cause to be ignited the goods of appellee; that it

exercised the highest degree of care, required of it under the law, with respect to said shipments. As appellee did not rely upon the negligence of appellant company, this plea was wholly irrelevant and was properly stricken out. All that is alleged by the second pararaph of the answer may be admitted without prejudice to appellee's right to recover. For similar reasons the third paragraph of the answer was properly stricken by the trial court.

There appearing no error to the prejudice of the substantial rights of appellant, the judgment is affirmed.