## Julius Kessler & Company v. Southern Railway Company in Kentucky.

(Decided October 30, 1923.)

Appeal from Jefferson ·Circuit Court
(Common Pleas, First Division).

1. Carriers—Negligence in Loss of Whiskey Destroyed During Riot Sufficient to go to Jury.—In a suit to recover the value of a shipment of whiskey destroyed by fire during a riot, evidence of negligence held sufficient to require the case to be submitted to the jury, though the bill of lading exempted the carrier from liability for loss resulting from riot or fire not due to the negligence of the carrier.

2. Carriers—Loss of Goods in Consequence of Riot Not a Vis Major at Common Law.—At 'common law destruction of goods in transit by a mob or in consequence of a riot was not considered a vis major, and as a general rule no exemption from recovery could be had therefor, though the carrier was permitted, in the absence of a statute to the contrary, to contract for a reasonable limitation upon its liability not including negligence.

3. Carriers—Exemption from Liability for Loss of Interstate Shipment Through Fire or Riot Without Negligence, Valid.—A provision in a bill of lading for an interstate shipment, exempting a carrier from liability for loss or injury to goods resulting from riots or fire not· due to the negligence of the company, is valid under the Carmack Act as amended.

4. Carriers—Prior Delay in Transportation Regarded as Remote Cause of Injury by Fire in Interstate Shipment.—Prior delay in transportation of an interstate shipment is regarded as only a remote cause of injury or ·loss of goods by fire in consequence of a race riot, and not as contributing thereto, at least unless the carrier had such notice of the situation as to cause it to apprehend the danger.

5. Carriers—Burden on Shipper or ·Consignee to Show Negligence where Loss Occasioned by Exempted Cause.—When an injury to an interstate shipment of good is shown to have been occasioned by a vis major or other exempting cause, it is the duty of the shipper or consignee to show negligence independently thereof.

6. Carriers—Evidence of Meeting of Chamber of Commerce on Afternoon of Race Riot Admissible in Action for Loss of Shipment

Destroyed by Fire in Consequence of Riot.—In an action for loss of shipment destroyed by fire in consequence of a race riot, where plaintiff introduced proof of the conduct and declarations of the rioters as evidence of the situation then existing and also newspaper publications indicating the notoriety of the affair as evidence of notice to defendant's agents of incendiarism, it was not error to admit proof of a meeting of citizens and militia officers to show what steps were being taken to preserve public peace as affecting defendant's duty in the matter of precautions against apprehended danger.

7. Trial—Counsel Held Entitled to Comment on Failure of Other Party to Introduce Deposition.—Where there was a stipulation that any depositions read in a former suit might be read by either party, counsel for one party could comment on the failure of counsel for the other party to read the deposition of one who was its vice principal, notwithstanding his right to introduce it himself.

8. Carriers—Instruction Restricting Question of Negligence to Certain Time Held Proper.—In action for loss of shipment by fire in consequence of a race riot, an instruction stating defendant's duty if, on the evening the property reached the railroad yards after 4:30 p. m., the manifestations of mob violence were such as to induce a reasonably prudent person to believe that there was danger of destruction of property, held not erroneous for restricting the question of negligence to a time subsequent to 4:30 p. m.; there being no evidence of incendiary fires before that time.

9. Appeal and Error—No complaint of Instruction Similar to One Offered.—A party cannot complain of the giving of an instruction which was similar to one offered by him.

10. Carriers—Only Ordinary Care to be Exercised where Danger of Destruction Through Mob Violence Apprehended.—Where agents of carrier apprehended danger of destruction of property in consequence of riot and fires, they are only required to exercise ordinary care to preserve and protect the property.

11. Carriers—Instruction as to Care in Protection of Shipment from Destruction by Mob Erroneous—"Imminent."—An instruction that, if the manifestations of mob violence were such as to induce a reasonably prudent person to believe that there was imminent danger of the destruction of property in the vicinity by mob violence, then it was the duty of a carrier to exercise ordinary care to preserve and protect shipments in cars in that vicinity, was erroneous by reason of the use of the word "imminent," because it was the duty of the carrier to exercise ordinary care for the protection of the property when it or its servants knew, or should have known, of such condition, though the danger was not "imminent;" that is, near at hand, immediate, or impending.

12. Carriers—Instruction Requiring Ordinary Care in the Use of the Means and Facilities at Defendant's Command Held Confusing.—In an action for loss of a shipment destroyed by fire during a race riot, an instruction that, if manifestations of mob violence were

such as to induce a reasonably prudent person to believe that there was danger of destruction of property, then it became the duty of the carrier and its agents to exercise ordinary care "in the use of the means and facilities at their command" to preserve and protect the property, was confusing when they had time and opportunity for wide discretion in the matter of precautions.

BRUCE, BULLITT & GORDON, GROVER G. SALES and LAWRENCE S. LEOPOLD for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

This suit was brought to recover the value of a cargo of whiskey consigned to the appellee at Tyrone, Ky., for transportation to Sacramento, Cal., on June 27, 1917, and which was destroyed by fire at East St. Louis, on the evening of July 2nd. From a verdict and judgment for defendant this appeal is prosecuted.

The petition alleged a wrongful and negligent failure to transport and deliver such cargo. This was denied by the answer, which also pleaded a provision of the bill of lading exempting it and connecting carriers from liability, "for any loss of, damage or injury to the cargo resulting from riots or fire not due to the negligence of the company."

A demurrer to this plea was overruled and in a reply the plaintiff pleaded negligent delay in transportation between Tyrone and East St. Louis, and that but for this delay the shipment would have gone forward before the fire, and not have been injured; that this was negligence directly contributing to the result.

It is also pleaded that a riot was in progress in East St. Louis during the night of July 1st, 1917, and that this was a matter of common notoriety in the city; that appellant had notice thereof, and thereafter negligently shipped the cargo into the city and thereby caused it to be destroyed.

A demurrer was sustained to the first of these paragraphs and overruled as to the second. It is now claimed by appellant that the court erred to its prejudice in ruling that the delay in shipment prior to the fire was not the proximate cause of the injury, and denying to it the right to rely on same; (b) in ruling that after it was admitted that the fire which destroyed the property was occasioned

by a mob it was essential to prove negligence on the part of the defendant, and in requiring plaintiff to assume the burden of proof in that respect; (c) error of court in permitting defendant to prove what occurred at a meeting of citizens and officers, including the commander of the military forces, which was held at the chamber of commerce on the afternoon of July 2nd; (d) error of court in refusing to permit the attorney for plaintiff to comment on the failure of defendant to introduce its superintendent as a witness; (e) erroneous instructions.

On the other hand, appellee contends that when it was shown that the fire which destroyed the property was set by a mob it was absolved from liability and that there was no evidence of any negligence upon its part, therefore the court should have given a peremptory instruction for it.

The case of Southern Ry. Co. v. Barbee, 190 Ky. 63, involved a similar loss occurring at the same time, and the details are therein set out with particularity, but some of the questions here raised were not considered in that opinion.

It appears that prior to this shipment some friction had arisen in the city of E. St. Louis between the white and colored races; that on the night of July 1st, two policemen had been killed by negroes and several of the latter had been shot. The St. Louis morning papers printed sensational articles concerning it, carrying bold headlines styled "Race Riots," &c. These were circulated generally throughout the city and great excitement prevailed. The bullet-ridden machines in which the officers were killed were on the street in front of police headquarters on the morning of July 2nd. Crowds of curious people congregated in the vicinity and inspected these as early as eight or nine o'clock in the morning. These crowds developed coherency and by ten o'clock had formed into parties traversing the principal streets, seeking vengeance upon such negroes as they found.

In the meantime the authorities had not been idle. During the preceding night, in response to a request of the mayor, the governor dispatched several companies of militia to the city. Early in the morning the police undertook to arrest such as were guilty of disorderly conduct, but by ten o'clock had lost control and ceased to do more, apparently relying on the militia, but the latter did not interfere until late in the afternoon.

At one p. m. the saloons were closed by executive order and about half-past one or two a meeting was called at the chamber of commerce attended by the colonel in command of the militia, the city officers and other prominent citizens. At this meeting the colonel stated that he thought that he had the situation in hand; that he had several hundred militia, with more coming and felt that he could maintain control.

Notwithstanding this, after the meeting broke up, mobs varying in numbers from a few persons to as many as 500 continued to traverse the streets, killing negroes in the presence of officers and militia without check, as many as twenty or more being killed during the afternoon. All this was accentuated by sensational articles appearing in different editions of the St. Louis afternoon papers.

During the larger part of the day the rioters confined their activities to seeking personal vengence upon the negroes without injuring property, but rumors that such destruction was their intention were widely circulated, and about five o'clock in the afternoon fires broke out in at least two places in the business district, a short distance to the north of defendant's Sixth street yard. These fires were extinguished without reaching its property, but this occurrence must have been known by its agents. It is in evidence that at about six in the afternoon an engine under steam at the end of this yard was obstructed by a line of hose with which the fire company was fighting fire. At this point its yard tracks run east and west; there are eight of these, including the lead track, and it appears that there were about 125 cars therein, including the one containing the shipment in question, it having been received in E. St. Louis at 10:45 a. m. and delivered to that yard at 4:30 in the afternoon of that day. To the south of these tracks there were a number of colored residences. After the above events these were ignited and the flames spread rapidly to the railway tracks, burning a number of cars, including the one containing this shipment. The troops had interfered late in the afternoon but without effect, and by 8 p. m. the city was practically given over to the rioters.

The superintendent of this yard telephoned the switchmen some time between 7:30 and 8 o'clock p. m. about the prevalence of these fires and directed them to go down and take care of the freight. Three engines responded promptly and went to the yards and did what they could to rescue the freight, but a number of cars, including the

one in question, were burned. It does not appear that any other precautions were taken during the afternoon or evening for its protection.

Assuming that the defendant's contention is correct as to its exemption under the bill of lading, we think this sufficient evidence of negligence to have submitted the case to the jury. It must have been evident that afternoon that the rioters were in a dangerous mood, and that incendiarism might develop at any time. It is true that at a meeting of the authorities control was promised, but it was clear that it did not materialize. From vague rumors and threats actual fires did develop by five o'clock in the afternoon.

All of these things taken together were circumstances from which a knowledge of danger upon the part of the defendant might be inferred, and it clearly appears that practically no precautions were taken to avert it, hence it was a question for the jury to say whether or not defendant was negligent.

At common law destruction of goods in transit by a mob or in consequence of a riot was not considered a *vis major,* and as a general rule no exemption from recovery could be had therefor, though the carrier was permitted, in the absence of a statute to the contrary, to contract for a reasonable limitation upon its liability, not including negligence; but under our constitution (section 196) the right to so contract for relief from its common law liability is denied, and this provision was applied in the case of Lewis v. L. & N. R. R. Co., 135 Ky. 369.

However, as an article of interstate commerce this shipment was controlled by the provisions of the Carmack amendment to the Hepburn Act as amended, and thereunder the exemptions relied on were valid. L. & N. R. R. Co. v. Miller, 156 Ky. 677; Adams Express Co. v. Cook, 162 Ky. 592; S. L. I. M. & Southern Ry. Co. v. Starbird, 243 U. S. 592.

But it is contended that the appellee was guilty of negligent delay by which the shipment was detained and thereby subjected to the fire, whereas if shipped promptly it could have been transported safely to its destination, and that such negligence was a producing cause of the injury for which it is liable. That principle has been adopted in this court and many of the other state courts. Cumb. Pipe Line Co. v. Stambaugh, 137 Ky. 528; Hersheim v. N. H. & M. Ry. Co., 18 Rep. 227; Plotz v. Miller,

21 L. R. 257; B. B. C. Co. v. Atchison Ry. Co., 94 Minn. 269; G. W. S. Co. v. Chicago, &c. R. R. Co., 130 Iowa 123; Central of Ga. R. R. Co. v. Sigma Lumber Co., 170 Ala. 627; Chicago, &c. R. R. Co. v. Miles, 92 Ark. 573; Wald v. Pittsburg, &c. Ry. Co., 162 Ill. 545; 10 C. J. 127; Hutchison on Carriers, section 301.

But as construed by the federal courts prior delay in transportation is regarded as being only a remote cause of injury and not as contributing thereto, at least unless the carrier has such notice of the situation as to cause it to apprehend the danger. R. R. Co. v. Reeves, 77 U. S. 176; St. L. I. M. & Southern Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223; Empire State Cattle Co. v. A. S. & S. F. Ry. Co., 135 Fed. 135; Same v. Same, 210 U. S. 1.

It is further held that when an injury is shown to have been occasioned by a *vis major* or other exempting cause it is the duty of the plaintiff to show negligence, independently thereof, the burden being upon him to do so. Southern Ry. Co. v. Prescott, 240 U. S. 632; N. O. & N. E. Ry. Co. v. Harris, 247 U. S. 367; Same v. Scarlet, 249 U. S. 528; Y. & M. Valley R. R. Co. v. Mullins, 249 U. S. 531. The lower court properly followed the rules adopted by the federal courts in these matters.

We do not think it was error to introduce proof of the meeting at the chamber of commerce on the afternoon of July 2nd. The plaintiff had introduced proof of the conduct and declarations of the rioters during the day as evidence of the situation then existing, and also the newspaper publications indicating the notoriety of the affair as evidence of notice to defendant's agents. Under such circumstances it was not improper for defendant to show what steps were being taken to preserve public order as affecting its duty in the matter of precautions against apprehended danger.

The depositions of a number of witnesses, including that of Fritz, superintendent of terminals, had been taken and read on the trial of the former case. In this trial there was a stipulation that any of these might be read by either party. That of Fritz was not read by either. In his concluding arguments counsel for plaintiff undertook to comment upon the defendant's failure to introduce Fritz as a witness, but was stopped by the court. Subsequently he referred to the matter again and was again stopped by the court, who stated in the presence of the jury that under the stipulation filed in this case either party might read the deposition of any wit-

ness who had testified, but neither could comment on the failure of the other to do so.

As superintendent of the terminal in which this car was destroyed Fritz was a vice principal. It is easy to conceive that he could testify to facts favorable to his side and yet make admissions which, coming from such a source, might be very damaging to the defendant. Under such circumstances plaintiff would not want to introduce him, as his interest was such that it would not be expected for it to thus vouch for him, but that ought not to prevent its counsel from commenting on the failure of defendant to do so, and the action of the trial court in denying this privilege was erroneous, but we are not prepared to say that it alone was sufficiently prejudicial to authorize a reversal.

The first instruction in part reads:

"If the jury shall believe from the evidence that on the evening of July 2nd, 1917, at and after 4:30 p. m., in the city of East St. Louis, Illinois, the manifestations of mob violence in the vicinity of the Sixth street yards of the Southern Railway in Kentucky were such as to induce a reasonably prudent person to believe that there was imminent danger of the destruction of property, located or placed in that vicinity, by mob violence, and you further believe from the evidence that the agents and employes of defendant company, or any of them, in charge of the Sixth street yards and of the property and merchandise contained therein, knew, or by the exercise of ordinary care would have known, of these conditions and dangers, if such there were, *then* it became the duty of the defendant company and its agents and employes to exercise ordinary care in the use of the means and facilities at their command, to preserve and protect the said property and goods from injury or destruction by mob violence. . . . "

This is criticised, first, because it restricted the question of defendant's negligence to a time subsequent to 4:30 in the afternoon of July 2nd; second, because, defendant was required to use ordinary care only; third, the apprehended danger should not have been modified by the word "imminent;" fourth, the phrase "of the use of the means and facilities at their command" is improper.

First, the cargo was delivered to this yard at 4:30. Prior to that time there had been no incendiary fires and

it cannot be said that there was evidence that this delivery was a negligent act. We think this criticism unwarranted.

As to the degree of care to be exercised by defendant's agents, it might be said that plaintiff offered an instruction which in this respect was similar to the one given, and it cannot complain. Central Traction Co. v. Combs, 143 Ky. 529; F. E. & C. Co. v. Williamson, 191 Ky. 674. Aside from this we think the instruction proper in this respect. Southern Ry. Co. v. Barbee, Caudill v. Southern Pac. Ry. Co. v. Reeves, *supra*.

The third contention is more serious. The jury may have believed that there were such manifestations of mob violence as would induce a prudent person to believe that there was danger of the destruction of the property by fire and that the defendant's agents knew of this or by the exercise of ordinary care should have known of it in time to have saved the property by the exercise of ordinary care; and yet have construed this instruction to mean, that although such condition existed, the agents were under no duty to adopt any precautions for the protection of the property until the danger became "imminent," that is, "near at hand," "immediate" or "impending" (Webster's New International Dictionary); that after the conflagration had developed to that extent the agent did use such care and the company was thereby absolved from liability. This is not the law. If the condition predicated above existed and the agents knew or in the exercise of ordinary care should have known of such, it then became their duty to use ordinary care for the protection of the property in their charge, and if they failed to do this, and by reason of such failure the injury resulted, the company was liable, and it was error to absolve it from all duty until the danger became imminent. The case of Frazier & Foster v. Danner, 146 Ky. 76, does not conflict with this view. There the facts showed the plaintiff to be in peril, and it was a question with him of choosing an alternative to avert the danger. In that instruction the word "danger" was not qualified by the word "immediate." The court held that under the facts it was clear that he was in "immediate danger" and that the omission of the word "immediate" could not have misled the jury, therefore it was not prejudicial. There the transaction was for but a moment of time, and necessarily "immediate." Here the car was in the yard

for about four hours, and the jury could have concluded that danger existed all of the time for which precautions should have been taken, but that the property was not placed in peril until too late to protect it by the exercise of ordinary care thereafter.

The phrase "in the use of the means and facilities at their command" applies to cases of emergency, where the party to whom negligence is imputed must act without delay and with limited instrumentalities, as in the case of an engineman who discovers a person in peril in front of his rapidly moving engine, and similar cases, but does not seem to apply to the facts of this case, as the agents of the defendant had time and opportunity for wide discretion in the matter of precautions.

If not prejudicial it was confusing rather than helpful, and in another trial it will be omitted.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.